R. E. PRATT & CO. *et al.*

*v.*

GEORGE M. ASHMORE.

*Opinion filed December 22, 1906—Rehearing denied Feb. 7, 1907.*

1. GAMBLING CONTRACTS—*what are gambling transactions under section 130 of Criminal Code.* All transactions in grain or other commodities are gambling transactions, within the meaning of section 130 of the Criminal Code, if it was the understanding of the parties that no deliveries were to be actually made but that the purchase or sale was to be adjusted by payment of differences.

2. SAME—*both parties must intend to settle by payment of differences.* To invalidate a contract under section 130 of the Criminal Code, it must appear that both parties intended to settle by the payment of differences and not by delivery of the commodity sold or purchased; but such intention may be established not merely by the assertions of the parties, but by all the circumstances attending the transaction, including its nature and the manner of carrying on the business.

3. SAME—*notes or conveyances based on gambling transactions are void.* If it is apparent from the facts and circumstances surrounding a transaction involving the sale of grain or other commodity that the matter is to be settled by payment of differences the transaction is a gambling one, and all notes, contracts or conveyances based upon alleged rights arising out of such transaction are null and void.

4. SAME—*what does not relieve transaction of its gambling nature.* A transaction involving the purchase and sale of grain is not relieved of its gambling character by the fact that the grain was in the city of Chicago and that warehouse receipts were held therefor by one of the parties, who was a member of a board of trade, the rules of which required actual delivery of the grain, where it was the understanding that the parties were to settle by payment of differences, the same as former transactions between them.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. SOLON PHILBRICK, Judge, presiding.

On December 20, 1903, the defendant in error, George M. Ashmore, filed his bill in the circuit court of Macon county, which was afterwards amended, against plaintiffs

in error, alleging that he was the owner in fee of certain real estate situated in the city of Decatur; that the defendant Frank M. Pratt resided in said city and the defendant Ralph E. Pratt resided in the city of Chicago; that during the period of the transactions in the bill set forth, said parties, Frank M. and Ralph E. Pratt, were partners, doing a commission business on the board of trade in Chicago under the corporate name of R. E. Pratt & Co.; that Frank M. Pratt looked after the interests of said corporation in the city of Decatur and adjoining localities; that Ralph E. Pratt was the business manager of said corporation in Chicago on the board of trade; that the corporation of R. E. Pratt & Co. was succeeded in the spring of 1902 by the firm of Pratt & Buckley, composed of R. E. Pratt and C. W. Buckley, and the firm of Pratt & Buckley was on November 16, 1904, succeeded by the firm of Buckley & Co., consisting of R. E. Pratt and C. W. Buckley; that during several months prior to December, 1901, the complainant had many dealings on the board of trade in Chicago in options through the agency of Pratt & Co. of Decatur and R. E. Pratt & Co., a corporation, and in the month of December, 1901, he began to speculate in rye, and continued such speculations until on or about April 21, 1902, which speculations were carried on through the agency of R. E. Pratt & Co., a corporation; that it was mutually understood between the complainant and the defendants at the time said transactions or speculations were had and entered into that no rye was to be actually received or delivered on said transactions, but that the same were made, and in fact were settled, upon differences between the market prices at which the rye was bought and sold, and with such understanding the complainant on certain dates bought certain amounts of rye which were closed out or sold on certain other days; that through the transactions conducted by Pratt & Co. of Decatur and R. E. Pratt & Co., a corporation, complainant lost $16,000, and afterwards, on April

21, 1902, the defendants, claiming to have advanced for complainant, on account of said deals and speculations, the sum of $10,000, demanded that a note secured by real estate deed be executed for the same; that complainant executed a note for $10,000, payable to Frank M. Pratt, and made a deed to him for the real estate described in the bill; that the only consideration for the execution and delivery of the note and deed was to secure the $10,000 claimed to have been advanced by defendants to cover losses sustained in the purchase and sale of said rye, and that the note and deed are void under the statutes of this State; that on September 1, 1902, complainant having made payments on said note, it was claimed by the defendants that there was still due on the same the sum of $7728.62, and that upon request or demand complainant delivered to Frank M. Pratt, for the use and benefit of R. E. Pratt & Co. and its successors, a promissory note for said amount, the full consideration for which was the losses above stated; that this note was subsequently delivered to Ralph E. Pratt, and the said Frank M. Pratt afterwards conveyed the real estate to the former; that the said deeds are clouds upon the title of said complainant, and the prayer was that they should be removed and the notes surrendered and canceled.

A joint and several answer was filed to the bill as amended, by all of the defendants, denying its allegations. The cause was referred to a master to take the evidence and report the same, together with his conclusions of law and fact. He reported in favor of the complainant, finding that the equities were with him and that he was entitled to the relief prayed in the amended bill. Exceptions to his report were overruled and a decree entered by the chancellor in accordance with his finding. A writ of error has been prosecuted by R. E. Pratt & Co., a corporation, Pratt & Co., Ralph E. Pratt and Frank M. Pratt.

HUGH CREA, and HUGH W. HOUSUM, for plaintiffs in error.

MILLS BROS., and LeFORGEE & VAIL, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Counsel for plaintiffs in error do not seek to have the decree of the court below reversed for errors of law, but admit that the case is one of fact. The question for our determination is whether the transactions between the parties, as set up in the bill, were gambling transactions within the meaning of section 130 of chapter 38 of our statutes, (Hurd's Stat. 1905, pp. 698, 699,) and whether, if void, the complainant was entitled to the relief prayed under sections 131 and 132 of the same chapter.

Section 130 provides that whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity, etc., shall be fined, etc., and that all contracts made in violation of the section shall be considered gambling contracts and shall be null and void. Section 131 provides that all promissory notes, mortgages or other securities or conveyances made, etc., by any person whatsoever, where the whole or any part of the consideration thereof shall be for money, property or other valuable thing won by any gaming, etc., shall be void and of no effect. Section 132 authorizes a recovery in an action at law or in chancery for any money or other valuable thing lost in gambling.

These several sections of the statute have been before us for construction on many occasions, and we have held that all transactions in grain or other commodities are gambling transactions, within the meaning of section 130, and are void, if it was the understanding between the parties that no deliveries were to be actually made but the purchase or sale was to be adjusted on the mere settlement of differences. Where a contract for the delivery and sale of stocks or other property in the future is not made with the intention that such stocks or property shall be received or de-

livered, but with the understanding, either expressed or implied, that the transactions shall be settled by the payment of the difference between the contract price and the market price at the time fixed or at some future time, such a contract is a mere gambling contract and is void. (*Schneider* v. *Turner,* 130 Ill. 28; *Pope* v. *Hanke,* 155 id. 617.) Contracts made between parties who have no intention of receiving and delivering the property but intend merely to settle accounts by the payment of the differences are void and will not be enforced. (8 Am. & Eng. Ency. of Law,—2d ed.—1005, 1006.) In order to invalidate the contract it must appear that neither party had the intention to deliver the property and that both had the intention of settling on the differences, only. But the intention in this regard may be established not merely by their assertions, but by all the attending circumstances of the transactions. The question of intention is a question for the jury or for the court, to be determined by a consideration of all the evidence. (*Pope* v. *Hanke, supra.*) The intention of the parties in such cases may be determined from the nature of the transaction and from the manner and method of carrying on the business.

The foregoing is substantially the language of this court in *Jamieson* v. *Wallace,* 167 Ill. 388, in support of which a large number of cases from this and the courts of other States, and *Irwin* v. *Milliar,* 110 U. S. 507, are cited. Later cases from our own decisions are to the same effect.

On the competency of facts and circumstances to prove the intention of the parties, it was said in *Bartlett* v. *Slusher,* 215 Ill. 348, on page 350: "But the contention of the appellants is, that there was no competent evidence tending to show that the parties intended there should not be any delivery of grain in discharge of the options, or that it was the mutual intention or understanding of the parties the options should be settled by way of differences in the market value and the option price of the grain. The intention or

understanding of the parties may be proven by circumstances as well as by positive proof. It is not indispensable that declarations or statements of the parties showing such intention or understanding should be proven. The intent and purpose of the parties may be established by all of the attending circumstances of the transaction.—*Pope* v. *Hanke,* 155 Ill. 617; *Jamieson* v. *Wallace,* 167 id. 388; *Weare Commission Co.* v. *People,* 209 id. 528." In establishing this fact the transaction is not to be viewed from the mere assertions of the parties, but is to be determined from all of the facts and circumstances surrounding the same; and if it is apparent that the transaction is to be settled upon differences it is a gambling transaction, and any rights arising thereunder, or any conveyances, notes or contracts made in lieu thereof, are null and void. *Bartlett* v. *Slusher, supra; Jamieson* v. *Wallace, supra; Weare Commission Co.* v. *People, supra; Partridge* v. *Cutler,* 168 Ill. 504.

The evidence here shows that for some time prior to September, 1901, the defendant in error owned an elevator and was engaged in the grain business at Lovington, Illinois. Before engaging in that business he had been for some time connected in various capacities with the grain business, first as a buyer for Pratt & Co. and later as a State grain inspector in the city of Decatur. While engaged in buying and selling grain at Lovington, this State, he had a number of transactions with Pratt & Co., selling and sending to them at Decatur, from time to time, grain purchased from farmers in the vicinity, which sales amounted, on an average, to two or three cars per week. He also sold and sent to R. E. Pratt & Co., at Chicago, a small amount of produce, amounting to perhaps four or five cars per year. He sold his elevator at Lovington in September, 1901, and began dealing on the board of trade through F. M. Pratt or Pratt & Co. of Decatur. During the time from December, 1901, to January 15, 1902, he purchased through F. M. Pratt about 140,000 bushels of rye at seventy cents per bushel, the pur-

chases having been made on the Chicago board of trade by
R. M. Pratt & Co. The entire amount of rye was sold at
various times before the day of delivery, and settlements
were made with R. E. Pratt & Co. upon the basis of the
difference in price at which the rye was bought and sold.
By this transaction he lost about $16,000, which by subse-
quent deals and payments was reduced to $7728.62 and the
notes and deeds in question were executed to secure the
payment of the same. It is contended on behalf of defend-
ant in error that it was the understanding between himself
and plaintiffs in error that these transactions were to be set-
tled upon the payment of differences and no actual delivery
of grain was contemplated by either party, bringing the case
clearly within the definition of a gambling transaction as
defined by the foregoing authorities. On the other hand,
it is claimed by plaintiffs in error that in all of these trans-
actions an actual delivery was intended, and the grain was
stored in a warehouse in the city of Chicago and receipts
held by plaintiffs in error for the same.

The evidence before the master in support of the con-
tention of defendant in error was his own testimony and
that of a witness who had formerly been in the employ of
the plaintiffs in error. Taking into consideration all the
facts and circumstances surrounding the parties, together
with the manner in which the business was done, we think
the weight of the testimony supports the allegations that it
was the intention of both parties that no actual delivery of
grain should be made and that the deals were intended to
be mere gambling transactions to be settled upon profit or
loss, as shown by the fluctuations of the market. At the
time the grain was bought the defendant in error was not
engaged in the grain business and had not been for some
time. He was worth about $25,000, and yet in less than
thirty days he bought on the board of trade, through R. E.
Pratt, who must have known his financial standing, 140,000
bushels of rye at seventy cents per bushel, amounting to

224—38

about $100,000. To make the purchase, however, he was only required to advance between $4000 and $5000. In addition to this purchase he made others on the board of trade, the amount of which does not definitely appear, but they were all settled by the payment of differences and not by the delivery or offer to deliver the grain. Unless the defendant in error has committed willful and corrupt perjury he at least understood that he was merely dealing in options. The testimony on behalf of the plaintiffs in error was to the effect that it was not their intention to settle on differences but on actual delivery of the grain. Only one of the parties, R. E. Pratt, testified. He was located in Chicago and admits he had no communication with the defendant in error at the time the purchase was made. F. M. Pratt, whose business location was in Decatur, made the contract with the defendant in error, and he was not even called as a witness, and did not attempt in any way to explain the understanding between the defendant in error and his firm or company. Practically, then, the testimony offered by the defendant in error as to the intention of the parties is uncontradicted. That the grain was in the city of Chicago and that warehouse receipts were held by plaintiffs in error, or that the rules of the board of trade required the actual delivery of grain, is immaterial. If it was the understanding between the seller and purchaser that the final settlement should be made between them upon differences the transaction was a gambling one, within the meaning of section 130, *supra,* and was absolutely void.

We have read with care and some interest the argument of counsel on behalf of the plaintiffs in error and have endeavored to give due consideration to the several positions therein maintained. After all, the case resolves itself into one of fact, pure and simple, and we think the evidence sustains the finding of the chancellor.          *Decree affirmed.*