THE FIRST NATIONAL BANK OF EL PASO, Appellant, *vs.*
M. L. MILLER *et al.* Appellees.

*Opinion filed June 18, 1908.*

1. APPEALS AND ERRORS—*lack of time to prepare a proper brief
does not excuse violation of rules.* Lack of time to prepare a proper
brief in the Supreme Court furnishes no excuse for filing the Appellate Court brief in the Supreme Court in violation of the rules,
particularly where it is largely devoted to a discussion of controverted facts, which the Supreme Court has no power to review.

2. SAME—*objection that Appellate Court's opinion does not dispose of all points urged will not be considered.* An objection urged
in the Supreme Court that the Appellate Court's opinion does not
dispose of all the points urged in that court by the appellant will
not be considered, as it is the judgment of the Appellate Court, and
not its opinion, that is to be reviewed.

3. SAME—*when error in not admitting proof of protest fees is
harmless.* Error in not admitting proof of protest fees in an action
by the assignee of a note is harmless where there was no recovery
against the defendant, the jury having found the note void, as evidencing a grain gambling debt.

4. GAMBLING CONTRACTS—*intention of both parties not to deliver grain must be shown—how proved.* To render a transaction
in grain illegal it must appear that neither party intended to deliver but intended to settle on differences; but such intention may
be established not only by the assertions of the parties, but by all
the facts and circumstances, including the nature of the transactions and the method of conducting the business.

5. SAME—*evidence of similar transactions in options is admissible upon question of intention.* In an action by a bank, as assignee of a note given by defendant to a grain broker, where the
broker testifies that he intended to deliver or receive grain in the
transactions, the defendant may show other transactions in options
or futures between the broker and third persons, occurring about
the time of his own transactions, which he testifies were to be settled on differences, only.

6. SAME—*when refusal to permit third party to testify as to his
intentions is harmless.* In an action by a bank, as assignee of a note
given by defendant to a grain broker, if the evidence clearly shows
that the transactions between defendant and the broker were illegal
option deals, it is not harmful to refuse to permit a third party to
testify that the broker had delivered or received grain in transac-

tions with other persons or that the witness intended to deliver the grain in his own transactions.

7. SAME—*entire promise fails if part of the consideration is illegal.* If part of the consideration for a note is money lost in grain gambling contracts the entire promise fails and no recovery can be had, even though the balance of consideration was not for money lost but was intended to cover future margins.

8. SAME—*when letter written by defendant should be admitted.* In an action by a bank, as assignee of a note given by defendant to a grain broker, which the defendant testifies was given for money lost in a grain gambling transaction, a letter written by the defendant to a third person, stating that he had given some notes to the broker for value received and if any of them should be offered to such person he could safely accept them, is admissible, as tending to contradict the defendant's testimony as to his intention not to deliver any grain but to deal in options.

9. SAME—*words "actual delivery contemplated," printed in order blanks, secure no legal right.* The words "actual delivery contemplated," printed in order blanks signed by parties dealing with a grain broker, are not necessary to a *bona fide* transaction, and must be regarded as intended for some other purpose than the securing of a legal right.

10. TRIAL—*irregularity in failing to formally join issue waived by verdict.* The irregularity of not formally joining issue on the common counts after pleas were filed to the special counts is waived by verdict, where no question as to such irregularity was raised at any time during the trial.

11. SAME—*right of defaulted party to cross-examine witnesses.* A defendant who has been defaulted but who appears at the trial may cross-examine witnesses only upon the question of the amount of damages, and he cannot cross-examine as to matters in support of special pleas filed by the other defendant, who was the maker of the note in suit, upon which the defaulted party was the endorser.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

A. C. NORTON, for appellant.

THOMAS KENNEDY, JOHN F. BOSWORTH, and McILDUFF & THOMPSON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in assumpsit on a promissory note for $1000 and interest, brought by appellant, as assignee before maturity, against M. L. Miller as maker and H. B. McGregor as endorser, jointly, under the Negotiable Instrument act, (Hurd's Stat. 1905, p. 1407,) which authorizes all or any number of parties to be sued in one action on a promissory note, either as makers or endorsers. Paragraph 7b of that act provides for entering judgment by default against certain defendants and the severing and proceeding to trial against the others. In this case a default appears to have been taken, but no judgment entered, against McGregor, the endorser, and the suit proceeded, the jury being sworn to try the issues against appellee Miller alone. Judgment not having been entered against McGregor, the jury should have been sworn to try the issues joined and assess the damages against him. (*McDonald* v. *Fairbanks, Morse & Co.* 161 Ill. 124.) No question, however, was raised on this point.

Appellant's brief and argument in this case consist substantially of a review of the Appellate Court opinion, with no separate and distinct statement of facts and brief of authorities. Attached to and bound in the same cover with the brief is a copy of the brief and argument filed in the Appellate Court. Counsel states that this is not in accord with the rules of this court, but says the appeal was consummated such a short time before the April term of court that he either had to do this or ask for an extension of time in which to file briefs. Lack of time furnishes no excuse for a plain violation of the rules. The reason for not filing the Appellate Court brief as the brief in any case in this court is manifest from the situation here. The judgment of the trial court on the verdict was affirmed by the Appellate Court. Under numerous decisions of this court the judgment of the Appellate Court, under such circumstances,

is final and conclusive as to all controverted questions of fact. (*Boyce* v. *Tallerman,* 183 Ill. 115; *Chicago and Alton Railroad Co.* v. *Flaherty,* 202 id. 151; *Alexander* v. *Loeb,* 230 id. 454.) The brief in the Appellate Court is largely a discussion of these controverted facts, hence a needless burden is placed upon us to sift from it what is properly reviewable by this court.

The evidence shows that McGregor, who resided at Pontiac, came to El Paso, Woodford county, Illinois, and opened an office in an upper room of a building known as the Hendron block. In the room were placed a few chairs and benches, a telephone, a telegraph instrument and an operator, and a blackboard, on which were placed market quotations in stocks and grains. He had no elevator or scales of any kind and the proof tends to show that he had no grain about the office. He circulated cards representing himself as the manager of "The Corn Belt Commission Co., correspondents of the Hammond Elevator Co. of Hammond, Ind.—I bid for Indianapolis Grain Co., Indianapolis, Ind., and Thomas S. Clarke & Sons, Baltimore, Md." He solicited business from various people, promising that it should be kept strictly secret. The evidence tends to show that most of the dealings were on margins or options, without any intention of receiving the grain bought or delivering the grain sold, although there is testimony that he did deliver or receive some grain. The customer deposited with McGregor from one to three cents a bushel, additional margins being required from time to time if the market went against him. Appellee Miller is a retired farmer living in El Paso. McGregor, then a stranger to him, met him on the street in El Paso and told him he was doing a commission business and solicited his patronage. Miller testified that McGregor said the transaction would be considered strictly confidential; that he was to be known as No. 27, so that if anyone got hold of McGregor's books or papers his name would not be known. McGregor de-

nies some of these statements, but the proof shows that Miller and others transacted their business by number instead of in their own names. Blank forms of orders to the Corn Belt Commission Company were offered in evidence by appellant and others were offered by appellee, some of which were signed "27" and others "M. L. Miller, per Mc." Miller's first deal with McGregor was December 7, 1904, and the last was May 15, 1905. On two of these deals he made a profit of $65.63. Notes were given by Miller at different times to keep up his margins, and on March 9, 1905, he signed the note here in question, payable to McGregor. At that time he was carrying fourteen deals, involving over 100,000 bushels of grain, amounting in value to between $75,000 and $100,000.

Appellant's declaration contained special counts on the note, and the common counts. Appellee Miller filed pleas to the special counts but did not join issue as to the common counts. Appellant requested the court, at the close of the evidence, to give an instruction directing a verdict, and it is now claimed that a verdict should have been directed on the common counts. The record does not show that any question was raised as to the irregularity in not formally joining issue as to the common counts, either at the time the motion was made to direct a verdict or at any other time during the trial. The law is settled that if parties go on with the trial without formally joining issue, this irregularity is waived after verdict. (*Brazzle* v. *Usher,* Beecher's Breese, 35.) When the plaintiff waives the right to take default or to rule the other party to plead and proceeds to trial, he is estopped to urge the want of a plea and must be held to have consented to try the case the same as if the general issue had been filed. *Loomis* v. *Riley,* 24 Ill. 307; *Hewetson* v. *City of Chicago,* 172 id. 112.

Miller testified that he had no intention of delivering or receiving the grain in any of these transactions, and that McGregor told him no delivery need be made but that the

deals would be closed by settling the differences between the price at the time the option was bought or sold and at the time of settlement. McGregor was asked if he ever made such a statement to Miller. He answered, "No, sir; nor to nobody else." The court, on motion of appellee, struck out all but the first two words of the answer. A sufficient reply to the contention that this ruling was erroneous is, that that part of the answer was not responsive to the question and was properly excluded on that ground.

It is strongly insisted that the court should not have permitted Miller to introduce evidence showing similar transactions in options, margins or futures by McGregor with persons other than Miller. Miller's intentions, alone, in these transactions will not render them illegal. In order to do that it must appear that neither party had the intention to deliver the property but that both had the intention of settling on the differences, only. This intention may be established not only by their assertions, but by all the attending circumstances of the transaction. The question of intention is a question for the jury or the court, on a consideration of all the evidence. The intention of parties in such cases may be determined from the nature of the transactions and the method of carrying on the business. (*Pratt & Co.* v. *Ashmore,* 224 Ill. 587; *Pope* v. *Hanke,* 155 id. 617; *Jamieson* v. *Wallace,* 167 id. 388.) While appellant admits this general doctrine, it is insisted that none of these decisions go to the extent of holding that the transactions between other parties may be shown. McGregor insisted in his testimony that he intended to deliver or receive grain in these transactions. His intention therefore became a material and vital question in the case,—substantially the gist of the action. The conclusion that such evidence as to other transactions with third parties, at and about the time of the transactions in question, may be introduced to show the character of the transactions is fairly deducible from what this court said in *Jamieson* v. *Wallace, supra,*

and *Pratt & Co.* v. *Ashmore, supra.* Even in criminal cases, where the intent is an essential ingredient, this court has held that it was competent to show that one on trial for procuring an abortion was in the habit of performing or had solicited such work. (*Clark* v. *People,* 224 Ill. 554.) We think it was competent, for the purpose of showing the nature of these transactions, to prove by other witnesses that they had similar transactions with McGregor at about the same time, but the period of time to be covered by this evidence must rest largely in the discretion of the trial court. In *Gardner* v. *Meeker,* 169 Ill. 40, it was held that evidence of similar acts three months after the acts in question was relevant. Transactions with third parties testified to in this case were all within the time that Miller was carrying on these transactions with McGregor,—that is, between December 4, 1904, and May 15, 1905. The note in question was given March 9, 1905. We think this evidence was competent.

Appellant contends that the trial court committed error in allowing evidence to be introduced as to McGregor dealing in "puts" and "calls." None of the witnesses appear to have any clear idea as to what was meant by these terms. The evidence on this question, when first introduced, was not objected to. Some thereafter was objected to and stricken out by the court. Regardless of whether the definition given by this court in *Pearce* v. *Foote,* 113 Ill. 228, as to the meaning of these terms be correct, the evidence in question, in the state of this record, could not have harmed appellant. That the transactions between Miller and McGregor were gambling deals was a controverted question of fact and must be held to be settled by the judgment of the Appellate Court. (*Gardner* v. *Meeker, supra,* and decisions heretofore cited.) We cannot see how it would change the nature of the transactions with Miller if it was proved that McGregor actually did deliver or receive grain from other parties, or how the ruling of the court

refusing to permit a witness to say that he intended to deliver grain and get his pay in the transactions he had with McGregor injured appellant. The questions of the trial court with reference to "puts" and "calls," the Chicago board of trade and the open board of trade could not have tended to prejudice the jury on the question of the nature of the transactions between Miller and McGregor. It is not contended that McGregor ever attempted to deliver any grain to Miller or asked Miller to deliver any actual grain to him. It is very evident, not alone from Miller's testimony but from that of McGregor himself, that all of the transactions between Miller and McGregor were speculative in nature,—a guess as to what the future price of the grain would be,—whether the putting up of these margins be called an option or a deal in futures. Even without the evidence of other deals by McGregor with third parties showing his intention, we think the conclusion is inevitable that the transactions between Miller and McGregor were gambling deals pure and simple. Appellant offered to show that the Hammond Elevator Company had a large elevator through which McGregor did his business. McGregor testified to the existence of this elevator but the court refused to allow the introduction of a photographic cut. We do not think this evidence was material. Moreover, no proper foundation was laid for its admission. *Iroquois Furnace Co. v. McCrea,* 191 Ill. 340.

In the midst of the trial appellant's counsel, apparently not feeling well, asked the court to allow attorney White to be associated with him. This was refused on the ground that during the examination of jurors counsel for appellee Miller asked if White was to take part in the trial and White himself answered that he was not. The court, however, said to appellant's counsel that if he did not feel well enough to go on, the case could be continued until the next morning. Counsel did not see fit to take advantage of this offer. A question of this kind must rest largely in the dis-

cretion of the trial judge. We cannot say that the court's ruling in this regard was erroneous.

Complaint is made of the refusal of the court to give appellant's instruction 21. There is some evidence in the record tending to show that at the time Miller gave the note in question he owed for margins not to exceed $400 or $500 and that the balance of the note was given to cover future margins. Refused instruction 21 asked the court to instruct the jury that if they believed, from the evidence, that $500 of the $600 consideration of the note was for money lost on a gambling contract and the balance was not for money lost, then they should find for plaintiff for such balance. We have held that nothing is better settled than if any part of the consideration upon which a promise rests is illegal the entire promise fails. (*Ramsay* v. *Whitbeck*, 183 Ill. 550.) We think the discussion on this question in the case just referred to fully answers all of the contentions raised by the appellant on this point. See, also, *Tenney* v. *Foote*, 95 Ill. 99, and *Douthart* v. *Congdon*, 197 id. 349.

Complaint is also made of the refusal of the court to give complainant's seventeenth instruction, which, in substance, held that if the jury believed that if the $65.63 was in Miller's hands, even though it had been won in a gambling deal, the plaintiff had a right to recover for this sum. The decisions heretofore cited, to the effect that when a part of a consideration is illegal the whole contract is void, furnish a complete answer to this contention. A further answer is the one given by the Appellate Court,—that this money had nothing to do with the note. The only recovery that could be had in the case was upon the note or upon the joint liability of McGregor and Miller to the bank. The Negotiable Instrument act is the only authority for permitting a recovery from one defendant alone. The bank had no connection with or interest in the $65.63. That was between Miller and McGregor, only.

April 27, 1905, appellee Miller wrote a letter to A. C. Norton, in which he stated: "I have given some notes to H. B. McGregor for value received, and in case he should offer any of them to you you can safely accept ·them. They are all right." This letter, being offered in evidence, was refused admission. It should have been admitted as tending to contradict Miller concerning the intention with which he entered into these transactions. We think, however, that it is clear, from all the surrounding facts and circumstances in this record, that the deals between McGregor and Miller were mere speculations as to the market price of grain, and that the exclusion of this evidence could not have affected the result. The printing of the words "actual delivery contemplated," in the orders signed by the parties when these transactions were entered into, is an unusual circumstance and not at all necessary to a *bona fide* transaction, and as we have before held, the purpose of such a contract must have been something other than the securing of a legal right. *Central Stock Exchange* v. *Board of Trade,* 196 Ill. 396; *Weare Commission Co.* v. *People,* 209 id. 528.

Protest fees were properly recoverable in this suit on the common counts provided there was a recovery on the note, hence the court should have admitted proof as to the amount of these protest fees; but as there is no recovery against Miller, the jury having found the note void, this error could not possibly harm appellant.

Appellee McGregor, as we have stated, was defaulted. It does not appear whether he was present in court when the trial began and the jury was being selected. However, he did appear afterward and asked to examine witnesses, and he was denied this right. He does not appear here by counsel, but has filed a typewritten brief urging that he has been greatly injured in reputation by the result of the trial. Having been defaulted he had the right to ·examine witnesses only on the question of the amount of damages, but

did not have any right to cross-examine as to matters in support of the special pleas. (*Foreman Shoe Co.* v. *Lewis & Co.* 191 Ill. 155; *Cook* v. *Skelton,* 20 id. 107.) As no evidence was offered as to the amount due, the court did not err in refusing to permit him to cross-examine the witnesses. He testified at length in regard to the transactions with Miller and the general character of his business. Even though he had been allowed to examine witnesses, we cannot see how such examination would have thrown any additional light on the question at issue. Our conclusions as to the character of the transactions have been so fully stated heretofore that we deem it unnecessary to comment on the questions raised in his brief.

Counsel for appellant argues at considerable length to show that the opinion of the Appellate Court does not discuss and decide all the questions raised by him. It is the judgment of the Appellate Court, and not its opinion, that is before this court for review. *Cummins* v. *Holmes,* 109 Ill. 15; *Pennsylvania Co.* v. *Versten,* 140 id. 637; *Bernstein* v. *Roth,* 145 id. 189; *Voigt* v. *Anglo-American Provision Co.* 202 id. 462.

We think we have covered all the many points raised in appellant's brief as to questions properly reviewable by this court. While some errors were committed by the trial court, we do not consider them of a character to justify a reversal of the case. (*Chicago and Eastern Illinois Railroad Co.* v. *Rung,* 104 Ill. 641; *Hill* v. *Parsons,* 110 id. 107.) We do not see how a new trial could result differently from the one here in question. *West Chicago Park Comrs.* v. *Boal,* 232 Ill. 248.

We find no reversible error in the record. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*