## Paul J. Campbell, Administrator, Appellant, v. R. B. McConnel, Appellee.

1. GAMING, § 43*—*what determines intention of Board of Trade transaction.* Where an administrator sought to avoid a note given by his intestate, on the ground that the transaction in question was a gambling deal on the Board of Trade, and where defendant claimed that there was no direct evidence of the intention of the decedent as to the making or receiving delivery of the commodity, the intention was determined from the nature of the transaction and other facts and circumstances in connection therewith.

2. GAMING, § 10*—*when Board of Trade transaction is gambling transaction.* Where a decedent, who at the time of entering into the transaction in question, was worth about $10,000, and raised between 8,000 and 9,000 bushels of corn of which he fed 2,000 and sold the balance at elevators, and had one crib accommodating about 2,000 bushels of corn and a granary which would hold 300 bushels of wheat or oats, bought 625,000 bushels of corn then worth $598,206.50, and no warehouse receipt was ever delivered to him and he never paid anything except sufficient to cover his margins, the transaction was a gambling transaction, which avoided a note given by him in settlement of his losses.

3. JUDGMENT, § 359*—*when decree refusing to vacate judgment based on gambling note will be set aside.* Where facts and circum-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

stances shown by the evidence, in a bill to vacate a judgment rendered in the Probate Court against the administrator of the estate of the maker of a note and to require the note to be delivered up and canceled, clearly proved that the transactions between the parties were nothing but gambling deals on the Board of Trade which could not be disguised by the testimony of one of the parties that they were legitimate contracts for the purchase and sale of grain, a decree dismissing the original bill for want of equity and rendering a money judgment on defendant's cross-bill was set aside.

Appeal from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded with directions. Opinion filed July 9, 1919. *Certiorari* denied by Supreme Court (making opinion final).

W. R. JEWELL, JR., for appellant.

LINDLEY, PENWELL & LINDLEY and MOSES, ROSENTHAL & KENNEDY, for appellee; WALTER BACHRACH and H. J. DARBY, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant, administrator of the estate of Frances M. Campbell, deceased, filed a bill in equity to have a certain judgment rendered in the Probate Court of Vermilion county against said estate vacated and declared null and void and that the note, which was the basis for the judgment, be required to be delivered up by the defendants and canceled, and that they be enjoined from further attempting to prosecute any suit to collect the same. It is alleged in the bill that Frances M. Campbell, in his lifetime, and R. B. McConnel had certain transactions whereby the latter contracted to have or give to said Campbell the option to sell or buy, at a then future time, grain and other commodities; that in said transactions it was understood between said parties that the grain so bought and sold and so contracted for was not to be delivered

or received, but such transactions were to be settled on differences between such market price and the price on the market at the time of settlement; that out of said transactions said Campbell suffered certain losses in settlement of which he made a certain promissory note, dated October 8, 1912, payable to the order of said McConnel one year after date for the principal sum of $3,046.25, with interest at the rate of 7 per cent per annum; that the whole or part of the consideration of said note was for money lost by said Campbell and won from him by the said McConnel by gaming; that all the contracts aforesaid were gambling contracts and void under the statutes; that said McConnel afterwards indorsed the note as follows: "Pay Lamson Bros. and Company, R. B. McConnel"; that said Lamson Bros. had filed the same as a claim against the estate of said Campbell, deceased, and have caused the same to be allowed as a claim against said estate in the Probate Court of said county, from which order of the court an appeal has been taken to the Circuit Court, where it is now pending.

Appellees, by their answer, denied that said note was given in settlement of gambling contracts as set out in the bill, but aver that it was executed on accounts of moneys previously loaned and advanced to and expended for and on account of said Campbell by said McConnel.

Appellees also filed a cross-bill, in which they aver that said Campbell, at the time the note was executed by him, was indebted to said McConnel in the principal sum of said note by reason thereof executed said note and that the same was indorsed and assigned to Lamson Bros. and Company for valuable consideration before maturity and that the latter is now the legal and bona fide holder of said note, which is now due and unpaid, and that appellant may be decreed to pay the same. Appellant filed his answer to said cross-bill,

averring in substance the facts alleged in the original bill.

The cause was referred to the master in chancery, who heard the proofs and rendered a report holding that the burden of proof was upon appellant to establish the fact that neither party to the transactions mentioned intended that any of the commodities bought or sold should be delivered, and that appellant has failed to establish such fact by a preponderance of the evidence. The exceptions to the master's report were overruled by the chancellor, who entered a decree dismissing the original bill for want of equity and rendering a money judgment on the cross-bill against appellant as administrator of said estate and against him in his own proper person for the sum of $4,483.13. Appellees contend that to invalidate the note in question, it was incumbent upon appellant to prove that at the time the transaction was entered into it was the intention of neither of the parties to make or receive delivery of grain or other commodity dealt in, and much stress is laid upon the fact that there was no direct evidence of the intention of Frances M. Campbell in regard thereto. The intention of the parties may be determined from the nature of the transaction and other facts and circumstances in connection therewith. In other words, the intention of the parties, like any other material fact in a case, will be determined from a consideration of all the evidence in the case. *R. E. Pratt & Co. v. Ashmore,* 224 Ill. 587; *Jamieson v. Wallace,* 167 Ill. 396; *First Nat. Bank of El Paso v. Miller,* 235 Ill. 137.

Frances M. Campbell, in the year 1912, owned an equity in a farm of the value of about $6,625, also personal property of the value of about $3,000. He raised between 8,000 and 9,000 bushels of corn, of which he fed 2,000 and sold the balance at the elevators. He had one crib which would accommodate about 2,000 bushels of corn and a granary which would hold 300

bushels of wheat or oats. During the year 1912, said Campbell bought of McConnel 625,000 bushels of corn worth, at the then market price, $598,206.50. None of this grain nor any warehouse receipt for the same was ever delivered to Campbell, and he never paid anything for the same except sums sufficient to cover his margins thereon on the Board of Trade. McConnel testified that all the deals made by Campbell in the purchase or sale of this grain were made with him, McConnel, personally, though the deals were consummated through Lamson Bros. and Company, who were members of the Chicago Board of Trade and who acted solely as agents for McConnel. McConnel further testified that all settlements were made upon the profits or loss derived from the difference in the price at which the grain was bought and the price at which it sold on the change in the market from the time of the purchase or sale until the trade was closed and that all such transactions were settled on margins. The longest stretch of the imagination could hardly fail to convince any reasonable person that these deals were purely gambling ventures and not bona fide purchases and sales of grain. The note in question was executed to cover losses sustained by Campbell in the deals in question. The facts and circumstances shown by the evidence clearly prove that the transactions between the parties were nothing but gambling deals on the Board of Trade and cannot be disguised by the testimony of McConnel that they were legitimate contracts for the purchase and sale of grain. The facts in this case are very analogous to those in *Lamson v. West*, 201 Ill. App. 251, wherein we said: "But one of the appellees' firm took the stand to deny knowledge that these deals were gambling deals, neither was Kelly, the agent, called to the stand to deny it, but if they had all denied it, their testimony could scarcely have weakened the convinc-

ing force of the circumstances which tend to show they all knew to the contrary."

The decree of the Circuit Court is reversed and the cause remanded with directions to dismiss the cross-bill for want of equity and to enter a decree to conformity with the prayer of the original bill.

*Reversed and remanded with directions.*