## PETO v. HOWELL.

### No. 7370.

Circuit Court of Appeals, Seventh Circuit.

Jan. 29, 1941.

250

M. Lester Reinwald, Morris Sostrin, Meyer M. Rich, and Philip E. Ringer, all of Chicago, Ill., for appellant.

Amos C. Miller, Edward R. Adams, and William Simon, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Upon a former appeal, Peto v. Howell, 7 Cir., 101 F.2d 353, 362, we reversed a judgment of the District Court wherein the latter had directed a verdict for defendant for the reason, among others, that plaintiff, in his prayer for damages, was relying upon illegal gambling contracts. We there said: "Under Section 328, Chapter 38 of the Illinois Revised Statutes, a contract for future delivery of commodities is denominated a gambling contract and void, if both parties intend at the time of making it that it shall be settled not by the delivery of the property involved but by payment only of differences in prices. * * * The courts have held that in order for a contract to be void as a gambling transaction, both parties must intend that it is to be settled by payment only of differences. Riordon v. McCabe, 341 Ill. 506, 173 N.E. 660, 83 A.L.R. 512. Existence or non-existence of intention is a question of fact. Consequently in order to justify the court's direction of a verdict on the ground that the contract was illegal, we must say that the evidence submitted, construed most favorably in behalf of plaintiff, discloses proof of a specific intent on his part not to deliver. To do this, it would be necessary for us to place ourselves in the place of the jury and to usurp its function. The plaintiff testified directly that he intended to make delivery of the corn he had sold; and that he was in position to do so and ready, willing and able to perform his undertaking in that respect. True, in the end, he settled by differences. But the evidence is such that we cannot say as a matter of law that he had the positive intent at the time he made the contract not to deliver. The question was one of fact for the jury. It might disbelieve the direct testimony of plaintiff as to his intention and ability; it had the right to consider also all other evidence bearing upon his intention, including the nature of the final settlement, plaintiff's facilities for dealing in commodities, his financial ability and all other relevant circumstances bearing in any wise upon the existence or non-existence of that intangible thing, intention. There having been substantial evidence of an intent to deliver offered by plaintiff, the trial court was without right to direct a verdict upon the ground that the contracts were gambles."

The case has been tried again. At the close of the evidence, plaintiff moved that

the jury be instructed that no proof of illegality had been offered and that, therefore, the only matter to be considered was the amount of plaintiff's damages. This motion the court denied, submitting to the jury the issue of whether plaintiff's contracts were void under the statutes of Illinois. The jury returned a verdict for defendant and plaintiff again appeals, insisting that the court erred in not granting its motion. Thus we are asked to hold that, upon the evidence, as a matter of law, plaintiff's brokerage contracts were valid; that the record disclosed no substantial evidence that plaintiff and his broker both intended not to deliver but to settle by differences. The issue is, was there complete lack of substantial evidence that plaintiff and his broker engaged in illegal contracts?

Plaintiff testified that he intended to make delivery of the grain reflected in his brokerage account and the invoices employed in the transactions between him and his broker recited that actual delivery of grain was intended. Were this the only evidence, it would have been proper to have instructed the jury as requested that there was no evidence of illegality. But, as we said on the former appeal, the jury had a right to consider not only the direct testimony of plaintiff but also all other evidence bearing upon his intention, including the character of the final settlements made, plaintiff's facilities or lack of facilities for handling and delivering commodities, his financial ability to effectuate delivery and all other pertinent circumstances bearing upon the existence or non-existence of intention to deliver or not to deliver. In Riordon v. McCabe, 341 Ill. 506, 173 N.E. 660, 664, 83 A.L.R. 512, the court said: "It seems unnecessary to argue that, if the intention of the parties is to be determined by their words alone, then in such proceedings as here brought it would be impossible to show a violation of the law. The rule is that it is immaterial whether the real intention is formally expressed in words if the circumstances in evidence show such intention, and a statement of intention that delivery should be made will not be allowed to prevail if the circumstances show the intention to have been that there should be no actual delivery of the commodities or acceptance thereof but merely an adjustment on differences."

In weighing plaintiff's direct testimony as to his intention, the jury had a right to observe and consider his additional testimony (1) that at the times when he sold corn, he owned it and intended to deliver it; (2) that when his so-called short contracts were entered into, he owned corn but did not intend to deliver that specific grain in settlement of his future sales contracts; (3) that he owned corn at no time in the spring of 1931, when the short sales were made; (4) that he intended to deliver corn owned by the parties to a certain joint account in settlement of his individual future contracts; (5) that the corn owned by the parties to such joint account had been sold for the account of those owners and that he did not intend to deliver it in settlement of his own future contracts. He had testified previously that at no time in the spring of 1931 had he actually owned any corn; at another time, that he did then own "some" corn; and that when he sold 50,000 bushels of July corn futures, he intended to deliver corn belonging to a joint account. When he was asked on cross-examination whether he expected to deliver joint account corn upon his personal commitments, he replied in the negative. The other party to the joint account testified that plaintiff had no authority to use the commodities of the joint owners in his personal transactions. These and other instances of inconsistency and apparent contradiction are relied upon by defendant as sufficient justification for the jury to discredit plaintiff's direct declaration of intention to deliver and to find that no delivery was intended.

The details of the transaction between plaintiff and his broker over a long course of time disclose that his grain deals were carried on the records of the broker's "option department"; that where actual delivery of grain sold short was to be made, a notation to that effect was placed on the ledger; that on plaintiff's records, no such notations appeared; that in no instances did Peto deliver a commodity which he had sold in a future market other than possibly one and not to exceed two, over a long period of time, and then only when plaintiff received grain which he did not expect to receive and accordingly disposed of. Otherwise, plaintiff delivered no grain.

Plaintiff's transactions with his broker were covered by P & S, (purchase and sale), invoices. When these were delivered to plaintiff from time to time by his broker, they included no demand for deposit of the purchase price for corn purchased for him

but constituted merely statements of accounts of differences between sales and purchases. The futures ledger of the broker disclosed on the right-hand side of one sheet, the short sales transactions of the customer and, on the opposite, his long transactions. Each short sale was closed on this account when it was settled by a purchase, a record of which was made directly opposite on the opposing sheet. On each long transaction appeared on the right-hand side of the page an entry disclosing the manner by which it was settled. These ledgers were not adapted to settlements by actual delivery and in the rare instances when delivery was made, a special notation to that effect was placed in the ledger account.

As compared with the futures ledger, the cash ledger disclosed only the customer's cash balance on transactions which had been closed. In no ledger account was he charged with the entire amount of a purchase, or, indeed, with any sum, until the deal was closed, when the resulting profit or loss was entered. The records of the members of the Chicago Board of Trade through whom plaintiff and his broker transacted business were kept in a similar manner.

Plaintiff was usually both long and short in equal quantities of grain, his purchases and sales being made simultaneously. When he altered his long position he usually made a like change in his short account. He bought customarily in one market and sold in another. There being constant fluctuations between the Kansas City market and the Chicago market, his gains and losses were measured in terms of those fluctuations irrespective of whether the price of grain rose or fell generally. For instance, in November, 1930, he was long 50,000 bushels of Kansas City May corn and short 50,000 bushels of Chicago May corn. Later he switched to short Chicago July corn and long Chicago September futures, and the loss for which he sought recovery occurred in Chicago July corn.

With regard to plaintiff's ability to make delivery, the testimony is that at the time in question, plaintiff was short 50,000 bushels of corn, which would have necessitated the expenditure of $31,006.25, if he made actual delivery. He was short also 50,000 bushels of wheat futures, of the value of $29,831, and long 50,000 bushels of wheat futures of the value of $31,581.25. To have effectuated actual delivery would

have required many thousands of dollars. At that time plaintiff and his wife as joint tenants owned a home worth about $10,000. He had a cash deposit with his broker, inconsiderable in amount. He had owned a membership on the Kansas City Board of Trade valued at $12,000 but this he had transferred. Actually, the evidence indicated, plaintiff had no tangible assets which he could have made use of in arranging financially to make actual delivery of grain he was bound to deliver if called upon so to do. He had no elevator facilities of his own but expected to rely, as other members of the public did, so he said, upon public elevators.

Many other circumstances were submitted to the jury and no useful purpose would be served by their repetition. The evidence, direct and indirect, was of such character as to raise a question of fact for the jury to determine,—whether plaintiff and his broker intended to deliver or whether, on the contrary, they intended to settle by the payment of differences only. Reasonable men might have reached different conclusions. Consequently, the court rightfully submitted the issue to the jury. American National Bank & Trust Co. v. United States, 7 Cir., 104 F.2d 783; Noble v. United States, 8 Cir., 98 F.2d 441; Southern Fruit Distributors v. Fulmer, 4 Cir., 107 F.2d 456.

■■ Plaintiff argues that the burden on defendant to prove that the contracts were invalid, as the court advised the jury, was not met. This proposition does not militate against the propriety of the court's action in submitting the issue to the jury. Where the preponderance of the evidence lay, whether it was to be found in the direct testimony of plaintiff as to his intention or whether it was to be gleaned from other facts and circumstances in evidence bearing upon the question, were matters wholly for the jury's determination. It is of no importance from what source evidence arises so long as it in the record and sustains the jury's verdict. The triers of the facts had a perfect right to find that the facts and circumstances were such as to support and satisfy the defendant's burden in this respect.

■ Plaintiff complains of the failure of the court to instruct the jury that in order to render the contracts invalid, it was necessary that the intention not to deliver by plaintiff and his broker be "mutual and disclosed." But the court had instructed

the jury that in order that the contracts between plaintiff and his broker be illegal as gambling contracts, there must have been an intent by both plaintiff and his broker, at the time the contracts were entered into, that they should not be settled by delivery of grains but only by payment of market differences; other similar instructions were included in the charge and fully complied with the statute as interpreted by the courts of Illinois. Riordon v. McCabe, 341 Ill. 506, 173 N.E. 660, 83 A.L.R. 512; Jamieson v. Wallace, 167 Ill. 388, 47 N.E. 762, 59 Am.St.Rep. 302; Pratt & Co. v. Ashmore, 224 Ill. 587, 79 N.E. 952. The instruction refused was mere repetition of what the court had already said.

The judgment is affirmed.