Myrtle M. Salzman, Appellant, v. William E. Boeing et al., Copartners Trading as E. Pierce and Company, Appellees.

Gen. No. 41,678.

84

Heard in the first division of this court for the first district at the April term, 1941. Opinion filed June 30, 1941. Rehearing denied July 14, 1941.

FYFFE & CLARKE, of Chicago, for appellant; JOHN HARRINGTON and ALBERT J. SMITH, both of Chicago, of counsel.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellees; HAROLD M. KEELE and EUGENE P. FLORSHEIM, both of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This cause was before us on a former appeal. (*Salzman v. Boeing,* 304 Ill. App. 405.) The suit is to recover money said to have been lost in wheat transactions through Pierce & Company on the Chicago Board of Trade. The complaint states these constituted gambling contrary to the Criminal Code and seeks to recover the amount lost under § 132 of chapter 38 of the statutes. On the former appeal it appeared the trial judge at the close of plaintiff's case, on motion of defendants, found in their favor and entered judgment. We held this ruling erroneous, reversed the judgment and remanded the cause. On the second trial (as the first, before the court without a jury) defendants again moved at the close of plaintiff's evidence for a finding in their favor, which the court denied, and defendants now argue cross-errors. Defendants did not stand on their motion but offered evidence thus waiving any right to argue error on that motion. *Popadowski v. Bergaman,* 304 Ill. App. 422; *Kahler v.*

*Marchi,* 307 Ill. App. 23. / On the second trial at the close of all the evidence defendants made a motion for a finding in their favor. This was granted and judgment again entered for defendants from which plaintiff again appeals.

The questions for decision are whether under the evidence the transactions in question amounted to gambling within the meaning of the statute and whether the finding is clearly and manifestly against the weight of the evidence. Plaintiff argues both propositions and asks this court to again reverse the judgment of the trial court and enter judgment here in her favor for the net amount of her loss, $18,345.53.

Points made require a review of the evidence. Defendants are co-partners, brokers in stocks and commodities, doing business under the name of E. A. Pierce & Company. The co-partnership was a member of the Chicago Board of Trade and of stock exchanges in New York, Chicago and other cities. Winthrop H. Smith was the resident manager in charge of the Chicago office. Messrs. Pahlke, Boulanger and Hargrave were employees known as "customer's men." Defendants' Chicago office was at 105 Adams street.

Plaintiff is a housewife residing with her husband at 128 South Parkside avenue, Chicago. Her husband by a former marriage passed away in 1923, when she took over his business (a motion picture theater) at Chillicothe, Illinois. She conducted it for six and one-half years, sold it and moved to Chicago, where she at first worked for film companies for about two months, then took over an apartment hotel of 44 furnished apartments, which she managed. She gave this up about May 1, 1936, because (she says) the rent was prohibitive. She had about $3,000 on hand after the sale of the furniture and decided to try the securities market. She went to defendants' office for the first time July 24, 1936. She had theretofore dealt with banks and through them purchased some stocks and

bonds. She had never before been to a broker's office or had an account with a broker's business. She says she "just walked through" and asked a customer how to go about buying stocks. The customer suggested she see Mr. Pahlke, who would tell her all about it. She did so, and opened an account depositing $3,000. She was then the owner of property worth from $20,000 to $25,000. She did not tell Pahlke she was remarried but stated she had been a "lone wolf" since the death of her husband.

Within the year plaintiff through defendants purchased and sold securities to the amount of $118,445.64. Monthly statements were sent by defendants to plaintiff. Her first order for securities was given July 24, 1936. She sold the last of these securities July 23, 1937. During the year she made 25 purchases and 25 sales. The largest purchase was 200 shares. She did not at any time own more than 650 shares. July 23, 1937, she closed her securities account with defendants at a profit of $482.23. During the year she paid defendants commissions of $186.63. She deposited with them in cash and securities $20,599.04. She made cash withdrawals of $3,105 and received in dividends on the securities $681.25.

In July, plaintiff changed her account from securities to commodities and entered the wheat market. She says she did this on the advice of Pahlke who told her he thought the wheat market would "fascinate" her. She also testified that she informed Pahlke of the particulars of her financial condition. This and other testimony to the same effect is denied by Pahlke and others with whom she talked. The trial judge expressed the opinion that both Pahlke and plaintiff stretched the truth a bit, which seems probable.

July 10, 1937, plaintiff bought 10,000 bushels of wheat, July 14 an additional 10,000 bushels of September and 10,000 of Winnepeg. July 16, she sold 60,000 bushels and July 17, 20,000 bushels. Her net profit

from wheat to that date was $3,195.41. She did not cease to be interested. Between July 17 and July 20 she purchased 140,000 bushels of wheat at the price of $180,412.50. The market declined. On August 4 her account was liquidated. It was wiped out. She owed defendants $156. July 17, when she purchased 100,000 bushels of wheat, her account with defendants was $21,262.64.

From these facts it is said the necessary conclusion must be that neither plaintiff nor defendants ever intended to take delivery since it is said it was impossible for plaintiff to pay for the wheat bought, a fact which, it is urged, Pahlke well knew to be true.

Section 130 of the Criminal Code (Ill. Rev. Stat. 1939, ch. 38, par. 328, p. 1162 [Jones Ill. Stats. Ann. 37.258]) provides in substance that where in such a transaction, it is the intention of both parties that settlement shall be made "not by the receipt or delivery of such property but by the payment only of differences in prices thereof," such a transaction is criminal and the contract void. Section 132, par. 330, provides that the losing party may sue and recover money thus lost.

All the transactions which plaintiff had through defendants in stocks as well as commodities, were upon her written order and executed either on the stock exchange or the Board of Trade where the rules required actual delivery of the property. It was stipulated defendants purchased and sold all of the wheat upon regular boards of trade for the account of plaintiff under contracts which provided for future delivery by the sellers of the wheat to the purchaser. The names of the sellers and purchasers, the prices at which the commodities were sold and the dates were set forth in the stipulation. Plaintiff did not say it was her intention the wheat should not be delivered or settlement made upon differences, or that anyone said to her that the transactions would be conducted

in that manner. She did say her only intention was to purchase the wheat and sell it as soon as she had a profit, and that she discussed this with Mr. Pahlke. Mr. Smith (the resident partner) testified it was the intention of defendants to make delivery and that defendants were at all times prepared to do so. Pahlke testified that it was his intention if plaintiff owned the wheat contract at delivery time she would take delivery and as to the securities she could have had them at any time she wanted them.

The statute has been many times construed, and it is well settled that a plaintiff, to recover in a suit of this kind, must show that both parties had the intention to settle by payment of differences in price only and not by the receipt or delivery of the property purchased. *Riordon v. McCabe,* 341 Ill. 506; *White v. Turner-Hudnut Co.,* 322 Ill. 133; *R. E. Pratt & Co. v. Ashmore,* 224 Ill. 587. It of course follows that if either of the parties had no such intention the transaction is valid. *Riordon v. McCabe,* 341 Ill. 506; *Pelouze v. Slaughter,* 241 Ill. 215; *Johnson v. Milmine,* 150 Ill. App. 208.

It is true, however, that what the parties to the transaction may say as to their respective states of mind is not always controlling or conclusive. Circumstances surrounding a transaction are more persuasive, and an examination of the cases indicates it is usual for the courts to so regard these particular circumstances. The fact that the transactions were carried out on the Board of Trade where the rules required delivery is an important circumstance in favor of defendants' theory, but it is not controlling. *Dickson v. Uhlmann Grain Co.,* 288 U. S. 188; *R. E. Pratt & Co. v. Ashmore,* 224 Ill. 587; *Salzman v. Boeing,* 304 Ill. App. 405; *Miller v. Sincere,* 273 Ill. 194.

In *Ehrlich v. Rothschild,* 292 Ill. App. 511, this court stated the rule applicable and pointed out that the intention of the parties might be determined from cir-

cumstances such as the lack of facilities of a buyer to accept delivery in the quantity ordered, whether they were in a business requiring the use of the particular commodity in the particular quantities, the previous dealings between the parties as well as subsequent dealings, the fact that only small deposits were required of a customer, the financial ability or inability of a customer, etc. The plaintiff here says her inability to pay for the large amount of wheat purchased by her shows conclusively that the intention was not to take delivery and that settlement should be made upon differences. The conclusive answer to this contention seems to be that, as a matter of fact, she was able to take delivery and took it, although it seems to have wiped out her account. Whether defendant knew the extent to which this would wipe out her entire estate is an issue of fact on which the finding of the trial court must be considered as against her.

Plaintiff cites cases such as *Riordon v. McCabe,* 341 Ill. 506; *Jamieson v. Wallace,* 167 Ill. 388; *R. E. Pratt & Co. v. Ashmore,* 224 Ill. 587; *Towne v. Buckley,* 230 Ill. App. 573; *Ohlendorf v. Bennett,* 241 Ill. App. 537; and *White v. Turner-Hudnut Co.,* 322 Ill. 133. In the last case the customer was an elevator corporation of which the brokers through stockholdings were part owners. In the other cases the relationship between the parties was so intimate and long-continued that defendants were held in each case to have an intimate knowledge of the plaintiff's affairs. Here plaintiff came to defendants a stranger. She was not solicited to come. She deposited cash, met all margins and her financial situation seems to have been disclosed fully for the first time after her trouble in regard to her speculations in wheat came on. We find nothing in the stock transactions indicating there was to be a settlement on differences instead of delivery. Plaintiff gave evidence of what she called a "free ride," which was secured by purchasing stock and selling within

three days without putting up margins. She says Pahlke suggested this method to her, but he denies it. When her disastrous wheat deals became apparent she took the matter up with Mr. Smith, the resident partner. He explained to her that the banks would loan her money and she could in that way take delivery. He told her she must be prepared so to do if she continued to carry the wheat. She did not say she had not intended to take delivery. She did not blame Pahlke for her difficulties. She did not mention any intention of herself or anybody to settle on differences. She did not tell Mr. Smith that Pahlke had illy advised her or that he was acquainted with her financial situation. If the facts had been as she now relates it is impossible to believe that she would have failed to tell Mr. Smith at this time. There is a stipulation of the parties to the effect that defendants actually bought and sold every bushel of wheat on which this action is based, and the names of the concerns from which they bought and to which they sold are attached to the stipulation. As defendants point out, the total commission of defendants on plaintiff's wheat transactions was $350. This is the extent of their profits from the wheat transactions. It is difficult to believe that in order to earn this comparatively small sum a reputable institution would risk the results which it is now sought to impose. *Johnson v. Milmine,* 150 Ill. App. 208, expressed a similar opinion of a similar transaction. In the trial court the question was whether plaintiff had proved her case by a preponderance of the evidence. In this court on this appeal the controlling question is whether the ruling and judgment of the trial court are clearly and manifestly against the weight of the evidence. *Broderick v. O'Leary,* 112 Ill. App. 658; *Hovald v. Cunningham,* 159 Ill. App. 134; *Alton Banking & Trust Co. v. Alton Building & Loan Ass'n,* 289 Ill. App. 177.

Within the last twenty years the subject of speculation in grain futures has come to be regarded as a

matter of national concern as indicated by the enactment of the Grain Futures Act. U. S. Code, 1934, Title 7, chapter 1, p. 109; U. S. Code, Supplement 5, Title 7, p. 49, §§ 1-17a. It is interesting to note in this case that the margin required by defendants was larger than that required in the administration of the national statute. Only in primitive situations is the delivery of a grain manual. In the great centers of population delivery is usually made by the transfer of warehouse receipts and other methods. Williston, Contracts, Vol. 6, § 1673, p. 4725. The evidence here is to the effect that plaintiff's business was done in the usual way, and so far as the brokers were concerned there was no intention whatsoever of doing it in any other way. It is to be regretted plaintiff sustained a loss she could illy afford to bear. She was, however, responsible for her own misfortune notwithstanding the observance of every restriction provided by law for her protection. The law has emancipated women.

The judgment will be affirmed.

*Judgment affirmed.*

McSURELY, P. J., and O'CONNOR, J., concur.