## J. C. Graff and John Schultz, Trading as J. C. Graff & Company, Defendants in Error, v. George Moench, Plaintiff in Error.

1. GAMING—*intention necessary to character of transaction.* In an action for money alleged to have been loaned defendant, in determining whether the money was for gambling transactions on the market, as pleaded by defendant, it is necessary to determine whether there was an actual intention on the part of plaintiff and defendant to deliver, make payment for, and receive the commodities purchased and sold.

2. GAMING—*evidence.* In an action for money alleged to have been loaned defendant, where defendant pleads that no money was loaned but that the claim is for the loss on gambling deals made with plaintiffs, where the evidence shows that defendant gave orders for the purchase and sale of grain to plaintiffs who communicated them to another firm which executed them on the Board of Trade, that plaintiffs never made any attempt to deliver or any demand for payment of the market value of the various commodities, that defendant had no facilities for handling the commodities and that all of the transactions

were settled upon the difference in market values, there is sufficient evidence to show they were gambling transactions for which plaintiffs cannot recover.

3. GAMING—*not a defense where grain is delivered.* Where defendant pleads that the money was for gambling transactions on the market, plaintiff is entitled to recover for grain which was actually delivered to defendant.

Error to the Circuit Court of Schuyler county; the HON. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed April 18, 1913. Rehearing denied May 16, 1913.

B. O. WILLARD and L. A. JARMAN, for plaintiff in error.

GLASS & BOTTENBERG and CHIPERFIELD & CHIPERFIELD, for defendants in error.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

J. C. Graff and John Schultz, defendants in error, were partners and doing business under the firm name of J. C. Graff and Company. Their place of business was at Rushville; Graff resided at Rushville and Schultz at Beardstown. They were engaged in buying and selling grain and seed. Rushville is a town of about 2,300 inhabitants. Schultz was also a member of the firm of Schultz, Baujan and Company of Beardstown, who were in the grain and milling business, and Schultz was also a member of the Chicago Board of Trade. Moench began buying and selling grain through Graff and Company who communicated his orders for sale and purchase of grain to Schultz, Baujan and Company of Beardstown, and they forwarded the orders to a company doing business under the name of Rumsey and Company at Chicago, and it is claimed that Rumsey and Company executed the orders on the Board of Trade. Neither Schultz, Baujan and Com-

pany nor Rumsey and Company knew that Moench was interested in these trades, the accounts were all kept with Graff and Company and credits of losses and profits were kept by Graff and Company. Graff and Company claim that they did not receive any of the commissions made on these trades for Moench, but the evidence discloses that John Schultz who was a partner of Graff received one-half of the commissions charged by Rumsey and Company, and the deals were made through Graff and Company.

This action is brought by Graff and Company against Moench to recover $3,726.09 alleged to have been loaned to defendant by plaintiff. The defense presented is that the deals were gambling transactions and were so known to be by Graff and Company, that no money was loaned to defendant but that the claim is for the loss on gambling deals made with plaintiffs.

Defendants in error recovered a judgment against plaintiff in error for $3,726.09, to reverse which judgment this writ of error is prosecuted.

As a cause of reversal plaintiff in error insists that the evidence discloses that the deals were had upon margins and were made in violation of the statute, and were gambling transactions, that there was no intention on the part of plaintiff in error or defendant in error that the deals should be consummated, by delivery of the commodities purchased or that the same were ever to be paid for; but that the deals were carried on entirely by payment of margins, and that all of the deals were closed out and all settlements made by differences between prices at the time when the deals were closed and when entered into.

Defendant in error, on the other hand, insists that there always was an intention to deliver, and to require payment for the commodity, and that defendants in error so informed plaintiff in error at the time they commenced their negotiations.

The only question to be determined in this case is whether or not the evidence discloses that there were gambling transactions, and to determine it, it is necessary to determine whether there was an actual intention on the part of plaintiff and defendant to deliver, make payment for, and receive the commodities purchased and sold. While the evidence discloses that defendants in error insist they informed plaintiff in error that they would deliver all of the stuff that he bought and would expect payment therefor, the fact that they did so inform him, if it is a fact, will determine the character of the transaction; the circumstances and conditions surrounding the parties together with the knowledge of these conditions and the manner in which the deals were conducted and closed must determine the question of the character of these transactions.

Defendants in error never made any attempt to deliver or never made any demand upon plaintiff in error for payment of the market value of the various commodities which were bought and sold upon his order. The record further discloses that all of the transactions had between them were settled and determined upon the difference in market values. Plaintiff in error was a farmer of moderate means, living near Rushville, he was forty-two years old. Graff, through whom he conducted his negotiations, was a resident of Rushville, about thirty-two years of age; they had known each other all their lives. Graff knew the financial condition and responsibility of plaintiff in error, he knew that plaintiff in error had no facilities for receiving or handling the commodities to the amounts of the purchases made by him through defendants in error. . They knew also that the deals they made for him if plaintiff in error was to be called upon to take and receive the commodity and pay for it, that the transactions frequently involved four or five times the

financial worth of plaintiff in error, and that he had no facilities for receiving or handling these commodities and could not pay for them. Although defendants in error knew these conditions, they furnished the money to Rumsey and Company through Schultz, Baujan and Company. It was necessary for them to do so because Moench was not known to the parties through whom the deals were made; and yet they charged plaintiff in error no commissions and received nothing for their trouble and interest in his behalf, in lending him their financial credit, time and trouble in assisting him to carry on these transactions. In fact, they would have us believe that they were doing this as a matter of friendship. Part of the transactions made showed upon the books of Graff and Company a profit to plaintiff in error, but at the time the last deals were closed and the business transactions between them ceased, defendants in error claim that the amounts owned by plaintiff in error to them were for moneys loaned by them to him for the purpose of settling his deals upon the Board of Trade. Whatever the profits may have been to plaintiff in error by any of his transactions, they were all wiped out by losses, and the losses at the end of the deal exceeded the profits by the amount claimed by defendants in error. And the record discloses that plaintiff in error paid defendants in error various sums of money, from time to time, which were used as margins to hold these deals.

Defendants in error claim that this action is not brought for moneys lost by plaintiff in transactions made by them, but that the transactions were made by plaintiff in error upon the Board of Trade through defendants in error as his agent, and that having been made in defendants in error's name they were responsible for the transactions and were compelled to pay these items, and that the money which they paid

in this manner was loaned to plaintiff in error for the purpose of liquidating his accounts. They insist that the rule of law is that where a party is engaged in gambling transactions which are prohibited by the statute, and incurs losses by reason of his deals, where he borrows money after the losses have been had, for the purpose of settling the losses, that a person who loans him moneys for this purpose is entitled to recover the same although they knew at the time that the money loaned was to settle gambling obligations and that the transactions had by them with defendant in error fall within this rule of law. The evidence in this record does not disclose the conditions claimed by defendants in error, but that the transactions were made with defendants in error, that they were instrumental and assisted in making them and even on their contention that they loaned the money to settle his losses on these transactions, and if they were gambling transactions, then defendants in error do not fall within the rule attempted to be invoked by them and they cannot recover in this action.

It appears from this record that defendants in error knew the conditions of affairs and knew the position they were liable to get into by reason thereof and that at the very outset they undertook to protect themselves by informing plaintiff in error that they would deliver the goods; even if this statement was made, it is so inconsistent when applied with all the surrounding circumstances and conditions and the character and amount of the trades that we cannot believe there was any intention to ever have carried them out as stated: the facts disclose that it was impossible to so carry them out, and defendants in error knew it. And we are of the opinion from this record and hold that all of the transactions made by plaintiff in error with defendants in error which were transmitted to Schultz, Baujan and Company and forwarded to Rum-

THIRD DISTRICT—APRIL, 1913.     133

Miller v. The Milwaukee Mechanics' Ins. Co., 181 Ill App. 133.

sey and Company in Chicago were gambling transactions and that they fell within the rule laid down in *First Nat. Bank v. Miller*, 235 Ill. 135, affirming 139 Ill. App. 608, and *Bartlett v. Slusher*, 215 Ill. 348, and that defendants in error are not entitled to recover for any money lost by plaintiff in error in those deals.

The record does disclose, however, that at the time of the commencement of this action plaintiff in error had bought from defendants in error at their place of business in Rushville several minor items, including bran, corn, flour and oats, which were delivered to him in the regular course of business by defendants in error in their dealing in grain and seed at Rushville, and for these they are entitled to recover.

We find that the judgment in this case is so clearly and manifestly against the weight of the evidence and contrary to the law that the judgment cannot be sustained. The judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*