SIMON KRUSE

*v.*

FRANCIS J. KENNETT *et al.*

*Opinion filed October 16, 1899.*

| 181 | 199 |
|---|---|
| 99a | 173 |
| 181 | 199 |
| 208 | 524 |

1. GAMING—*right of third party, under section 132 of Criminal Code, to sue for treble sum lost, extends to gambling in grain.* The right conferred upon any one, by section 132 of the Criminal Code, (Rev. Stat. 1874, p. 372,) to sue for and recover treble the value of money lost by betting in case the loser does not, within six months, sue for the sum lost, applies to money lost by gambling in grain options, in violation of section 130 of such code.

2. SAME—*section 132 of Criminal Code construed as to who is a "winner."* A broker or commission man who receives money or property to be used in the payment of losses incurred in transactions in grain which are gambling contracts under section 130 of the Criminal Code, is a "winner," within the meaning of section 132, and subject to the penalty imposed thereby.

3. SAME—*severity of penalty for gambling furnishes no reason against enforcing the law.* The severity of the penalty imposed by a statute against gambling, which authorizes a recovery by any person of treble the amount lost, furnishes no reason against its enforcement, where the language authorizing such recovery is clear.

CARTWRIGHT, C. J., dissenting.

*Kruse* v. *Kennett,* 69 Ill. App. 566, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

FOSTER & KRUSE, for appellant.

D. M. KIRTON, and WALTER S. HULL, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Appellant filed in the circuit court of Cook county a declaration against appellees, the first count whereof is:

"For that whereas said defendants heretofore, to-wit, on the seventh day of September, A. D. 1893, at the city of Chicago, county of Cook and State of Illinois, were en-

gaged, under the firm name of Kennett, Hopkins & Co., in the business of gambling in grain and in wagering and betting on the market price of grain at a future time; and whereas, the said defendants heretofore, to-wit, on the day and year aforesaid, at the city of Chicago aforesaid, made an agreement with one J. Q. Savage that they, the said defendants, would, from time to time, as the brokers of said J. Q. Savage but in their, the defendants', own name, enter into contracts with divers persons for the purchase and sale of grain for future delivery, and that there should be no delivery of the grain so purchased or sold; and that said plaintiff further says that it was then and there further agreed and understood by and between the said defendants and the said J. Q. Savage that the said J. Q. Savage should not be called upon or required to receive, deliver or pay for any of the grain that might be so purchased or sold by the said defendants for the account of the said J. Q. Savage; that all of the contracts that might be made by the said defendants for the purchase or sale of grain, as aforesaid, should be settled before the time for delivery arrived, by the payment or receipt of the difference between the price at which the grain was or might be bought or sold and the market price of like grain for like delivery at the time of settlement, and that all such transactions and deals in grain should be settled upon differences, as indicated and determined by the fluctuation of the market; and that plaintiff says that it was then and there further agreed and understood by and between the said defendants and the said J. Q. Savage that the defendants should, from time to time, as the brokers of said J. Q. Savage but in their, the defendants', own name, make contracts to have and to give to themselves the option to sell and buy grain at a future time; and the plaintiff further says that in pursuance of the aforesaid arrangement, agreement and understanding, and as the brokers of the said J. Q. Savage, the said defendants, not regarding the statute in

such case made and provided, did heretofore, to-wit, on the seventh day of September, A. D. 1893, at Chicago, aforesaid, enter into contracts for the purchase and sale of a large amount of grain, to-wit, 1,000,000 bushels of wheat and 50,000 bushels of corn for delivery at a future time, and that before the maturity of any of said contracts all of said deals and transactions in grain were closed and settled by the payment or receipt of differences, and that no grain was delivered on said contract; and the plaintiff further says that in pursuance of the aforesaid agreement and understanding, and as brokers of the said J. Q. Savage, the said defendants, not regarding the statute in such case made and provided, did heretofore, to-wit, on the seventh day of September, A. D. 1893, at Chicago, aforesaid, enter into contracts, in their own name, to have and to give to themselves the option to sell and buy at a future time a large quantity of grain, to-wit, 100,000 bushels of wheat and 100,000 bushels of corn, and that for the purpose of reimbursing and indemnifying the said defendants against losses which they had or might sustain by reason of the deals and transactions aforesaid, the said J. Q. Savage, as J. Q. Savage, A. N. Knapp, Higbee & Savage, McIntosh & Savage, N. L. Stewart, and Savage & Forsythe, did heretofore, to-wit, on the seventh day of September, A. D. 1893, at Chicago, aforesaid, pay to the said defendants a large sum of money, to-wit, the sum of six thousand (6000) dollars, being money then and there lost and paid by the said J. Q. Savage to the said defendants at one and the same time exceeding the amount of ten dollars, and by the said defendants then and there won of and from the said J. Q. Savage by wagering and betting on an unknown and contingent event, to-wit, on the market price of grain at a future time, contrary to the form of the statute in such case made and provided; and the plaintiff says that the said J. Q. Savage did not, within six months from the time he lost and paid the said several sums of money, as

aforesaid, bring suit to recover the same or any part thereof, whereby, and by force of the statute, to-wit, section 132 of chapter 38 of the Revised Statutes of the State of Illinois, an action had accrued to the said plaintiff to have and recover of and from the said defendants, as well for the said county of Cook as for himself, the sum of eighteen thousand (18,000) dollars, being treble the amount in value of the said several sums of money lost and paid by the said J. Q. Savage to the said defendants, as aforesaid."

The declaration contained a second and third count, both in substance the same as the one set out above.

The court sustained a general demurrer to the declaration, and, as the appellant (plaintiff below) elected to abide by his pleading, dismissed the action at the cost of appellant. The judgment of the circuit court was affirmed by the Appellate Court for the First District on appeal, and the cause comes here by further appeal of the plaintiff below.

Section 132 of the Criminal Code, referred to in the declaration, is as follows: "Any person who shall at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or *by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever,* lose to any person so playing or betting any sum of money or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same shall be at liberty to sue for and recover the money, goods or other valuable thing so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction.  *  *  *  In case the person who shall lose such money or other thing, as aforesaid, shall not,

within six months, really and *bona fide* and without covin or collusion, sue and with effect prosecute for such money or other thing by him lost and paid or delivered, as aforesaid, it shall be lawful for any person to sue for and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid, one-half to use of the county and the other to the person suing." ·

The section, the italicised portion omitted, was enacted in 1845. As enacted in 1845 it covered the offenses denounced as gambling by the criminal statutes then in force. Contracts of the character set out in the declaration were not then declared to be gambling contracts by the statute. In 1874 the General Assembly enacted section 130 of the Criminal Code, as follows: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so, in relation to any of such commodities, shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void." At the same time, and as a part of the same enactment, the General Assembly re-enacted section 132, and added the words appearing in italics in the copy of that section hereinbefore set out.          ◦

It is manifest the italicised words were added to the section for the purpose of extending the remedies and penalties provided by it to newly declared offenses of gambling, including gambling in grain options, and this court has distinctly ruled that the remedial parts of section 132 extend to and include contracts to sell or buy grain in violation of the terms of section 130. In *Pearce* v. *Foote*, 113 Ill. 228, which was an action in trover brought

under said section 132, we held that the plaintiff was entitled, under the provisions of the section, to recover the value of a note given to him by another, and which note he had transferred in settlement of "differences" in deals in grain options negotiated under contracts entered into in violation of the provisions of said section 130. In *Cothran* v. *Ellis*, 125 Ill. 496, the ruling in *Pearce* v. *Foote, supra*, was referred to as announcing the construction given the section by this court. In *Jameson* v. *Wallace*, 167 Ill. 388, the complainant in a bill in chancery was held entitled, by reason of the provisions of said section 132, to a decree awarding the return of certain collateral shares of stock in incorporated companies pledged by her to the defendant in the bill, her broker or commission merchant, to secure said defendant against losses incurred in a transaction in the stock of a gas company, the transaction being a gambling contract under the terms of section 130, and a decree rendered by the circuit court in favor of the complainant in the bill for the value of certain of such collaterals sold by defendant was affirmed in this court.

It is unnecessary the grounds of these decisions should be re-stated. These cases commit this court to the position the remedial portions of section 132 may be resorted to by a loser in a transaction denounced as gambling by the provisions of section 130. The action sought to be sustained in the case at bar is based upon the penal provisions of the section, and is given in express terms by the section to any one who will sue, in the event the loser does not, "within six months, really and *bona fide* and without covin or collusion, sue and with effect prosecute for such money or other thing by him lost and paid or delivered, as aforesaid,"—that is, in the event the loser does not avail himself of the remedial portions of the section.

The rule penal statutes are to be strictly construed should not be departed from, to the end that penalties shall not be inflicted except in cases clearly intended to

be included in such statutes. But it is not permissible to arbitrarily indulge the rule to such an unreasonable length that the manifest intention of the law-making power shall be defeated by mere construction. The language employed in the section prescribing the penalty and giving the right of action to recover it is clear and unambiguous, and the mere fact it imposes a severe penalty furnishes no reason to deny it full operation in the courts, nor does other sufficient reason appear for so doing.

It is forcibly and vigorously urged the "remedies" provided by section 132, by the express terms of the section, are to be enforced only against one who was "winner" in the transaction, and that the defendants (appellees) herein were but the brokers or commission merchants engaged by Savage to conduct the negotiations and make purchases and sales for him, and that while Savage may have paid money to them, (appellees,) the money so paid was for the purpose of securing them against loss upon his purchases and sales of grain, or for the purpose of paying his losses to those who did win, on the contracts made by defendants for him. That contention cannot be regarded as an open one in this court. We held in *Pearce* v. *Foote, supra,* and *Jameson* v. *Wallace, supra,* that if one acting as broker or commission man for another in the purchase of grain or stocks, under contracts which are gambling contracts under section 130, receive from such other money or property to be used, and which is used, in the payment of losses incurred in the transaction, the broker or commission man is a "winner," within the meaning of that word as employed in the statute in question. The allegations of the declaration show that the defendants were "winners" from Savage, even more clearly than did the facts developed in the cases cited show the defendants in those cases were "winners." The allegations of the declaration in substance are, that the defendants entered into an agreement with Savage that he should

make illegal contracts to buy from or sell certain quantities of grain to them at certain prices, and that they would enter into illegal contracts with other persons to buy from or sell to such other persons like quantities of grain at like prices, and that Savage should pay to the defendants all sums they should win from him on the contracts made by them with him, in order to provide a fund wherewith they could pay such amounts as should be won from them on their contracts with such other parties. The declaration alleges that Savage did make such illegal contracts with the defendants, and that he paid to them the losses on such contracts. It is clear they won such sums so paid to them by Savage, and the fact they lost the same sums to other parties does not make them any the less "winners." The declaration disclosed a good cause of action.

The judgment of the Appellate Court and that of the circuit court are reversed, and the cause is remanded to the circuit court with directions to overrule the demurrer and require the defendants to plead.

*Reversed and remanded.*

Mr. Chief Justice Cartwright, dissenting.