[Civ. No. 1153.   Third Appellate District.—February 24, 1914.]

## GEORGE MATTHEWS, Respondent, v. FRANK LOPUS, Appellant.

WAGERS—REPUDIATION BY ONE PARTY—RIGHT TO WITHDRAW MONEY.— Where a party to a wager of money or property upon the result of a certain event disaffirms or withdraws from the same before the event has happened, he ordinarily will be entitled in law to a return of his money or property.

ID.—BET ON WRESTLING CONTEST—ACT DENOUNCED BY PENAL CODE.— But where the wager is pronounced a crime by statute, as in the case of a wager on a wrestling contest, a party thereto cannot recover his money from the stakeholder, although the contest is stopped before its completion and thereupon such party repudiates the transaction and demands the return of the money.

ID.—WAGER—WHEN A COMPLETE CRIME.—The mere act of making such a wager was a complete crime, and the transaction was void from its inception and not the subject of disaffirmance or withdrawal.

ID.—STAKEHOLDER AS AIDER AND ABETTOR.—Not only was the act of the party in placing the wager a misdemeanor, but also that of the stakeholder in receiving it, since, by accepting and retaining the wager, he became an aider and abettor in the consummation of the crime, or thus encouraged its commission.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

W. H. Early, for Appellant.

E. M. Norton, and Fred W. McConnell, for Respondent.

HART, J.—This is an action for the recovery of money placed on a wager by the plaintiff and one William Matthews in the custody of the defendant as a stakeholder.

The complaint, in substance, alleges that, on the fifteenth day of September, 1912, at the town of Penngrove, in Sonoma County, the plaintiff and said William Matthews deposited with the defendant as wagers the sums of five hundred dollars and one hundred dollars, respectively, said sums, with other moneys wagered against them, to be held by the defendant as a stakeholder with the mutual understanding between the parties and instructions to the defendant that the moneys so held should be paid to the winner of a certain "wrestling" contest, to take place at said town of Penngrove, on the said fifteenth day of September, 1912, between the plaintiff and one George McLeod; that on said day, at about the hour of 3:30 P. M., said wrestling match was started, but that before the same was finished or completed, it was stopped by one John Lopus, a deputy sheriff of Sonoma County, because such contest involved an infraction of the law, (Pen. Code, sec. 337a, as amended in 1911—see Stats. 1911, p. 4); that immediately upon the stopping of said contest, and before any decision therein was given by the referee thereof, the plaintiff and the said William Matthews gave notice to the defendant that they repudiated said wagers and attempted to withdraw therefrom

and demanded of the defendant the return or payment to them of the sums so deposited by them with him; that the defendant refused to yield to that demand, and still refuses to turn over said moneys to the plaintiff, who, subsequently, and before the commencement of this action, so the complaint declares, became the owner by assignment, for a good and sufficient consideration, of the claim of said William Matthews. The prayer of the complaint is for judgment for the sum of six hundred dollars, legal interest and costs of suit.

The defendant demurred to the complaint on general and special grounds. The demurrer was overruled, and the defendant thereupon filed an answer, the averments of which need not be noticed here, since the appeal is from the judgment, entered upon the order overruling the demurrer, upon the judgment-roll alone, and the sole contention urged against the legality of said judgment is that the complaint does not state a cause of action against the defendant.

In support of that contention, the defendant submits these propositions: 1. "That the placing of money as a wager or bet in the hands of a stakeholder being a criminal offense, punishable by fine and imprisonment (Pen. Code, sec. 337a), no action can be maintained by one of the guilty parties against the other to recover the money thus illegally staked; 2. Because the bet or wager and the partial execution of the illegal object deprives the party of the right to repudiate the illegal contract and recover money paid or deposited thereunder."

Since the demurrer necessarily admits the verity of the facts stated in the complaint, it is to be assumed that that pleading contains a true narrative of the history of the transaction out of which this controversy arises. It must, therefore, be taken as true that, although the event upon which the wager was staked was actually commenced, it was not in any sense prosecuted to a finish nor, consequently, decided. It must also be accepted as true that the plaintiff, before the completion of the event, disaffirmed and withdrew from the illegal contract to which thus he became a party.

The real question here, then, is whether, under the circumstances disclosed by the complaint, he was legally authorized to repudiate the agreement and so be entitled in law to the return of the money deposited by him under said agreement with the stakeholder.

24 Cal. App.—5

Gambling contracts, being opposed to good morals and public policy, are not recognized by the courts. The principle applicable to them is expressed in the two maxims, *"Ex dolo malo non oritur actio"* and *Ex pacto illicito non oritur actio."* Where, however, a party to such contract, which involves a wager of money or property upon the result of a certain event, disaffirms or withdraws from the same before the event has happened, he will, ordinarily, be entitled in law to a return of the money so put up by him. The last mentioned rule and the reason supporting it are stated in the case of *Wassermann* v. *Sloss,* 117 Cal. 425, [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566], as follows: "The good or bad morals of this understanding is immaterial, for the reason that the venture was in no sense executed, and until executed both parties are given an opportunity for repentance and rescission. Seeing the error of his ways, a party may withdraw from the transaction, and the law extends to him a helping hand by offering the inducement of giving back to him anything of value with which he has parted." (See, also, *Johnston* v. *Russell,* 37 Cal. 670; *Wise* v. *Rose,* 110 Cal. 159, [42 Pac. 569].) If this was all that could be said of the present case we should be inclined to hold that the complaint states a cause of action and that the judgment, so far as the record before us discloses, should be upheld. But a situation is presented here very different from that found in those cases in which it is held that one may disaffirm a contract *contra bonos mores,* to which he had become a party, and so be restored to *statu quo,* prior to the execution of the transaction to which such contract relates. This arises from the present state of our law upon the subject of such transactions, particularly that kind of a transaction that constitutes the basis of this controversy.

The legislature of this state, at its session of 1911, and prior to the time at which the transaction concerned here occurred, amended section 337a of the Penal Code (Stats. 1911, p. 4), by adding thereto the following provision: "Every person . . . who lays, makes, offers or accepts any bet or bets, or wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast or between men, beasts, or mechanical apparatus, is punishable by imprisonment in the

county jail or state prison for a period of not less than thirty
days and not exceeding one year.''

It will thus be observed that, under our law, as it stood at
the time of the transaction giving rise to this action and as it
now stands, the act of the plaintiff in making the wager upon
the result of the ''contest of skill,''. in a wrestling match, be-
tween himself and said McLeod was itself a crime, and the
money sought to be recovered here constituted one of the essen-
tial means whereby the crime was committed. The conse-
quence is that the transaction was void from its very inception.
Indeed, the transaction in law was not a contract. It was a
crime fully completed and consummated upon the execution
of the act of making the wager, and it, of course, could not
be the subject of disaffirmance or withdrawal by the parties
to the wager in the sense that thus the law could take cogniz-
ance of the transaction and restore the parties to *statu quo.*

The rule as to disaffirmance of gambling contracts by the
parties thereto applies, as we have shown, only when the wrong
as to which the wager is made has not been consummated. In
cases where that rule has been applied, there having been no
law declaring the act of making bets on events of the character
of the one in this case itself a crime, the mere making of the
wager was not considered to be characterized by that degree
of turpitude which would prevent one from repenting and
repudiating such act before the happening of the event upon
which it was made and from receiving the sanction of the law
for such repentance and disaffirmance. To the contrary, in
such cases it is, with eminent propriety, held to be the policy
of the law, where it can be done consistently with its express
mandates, to encourage persons who have entered into such
contracts, which are improvident as to them and, when fully
executed, harmful to the best interests of society, to withdraw
from or rescind them before the event as to which they have
been made has taken place—an event upon which the law
frowns, even though it has not been penalized.

In the case here, however, while the transaction as to which
the wager was made had not been completed and the disaffirm-
ance of the wager may, therefore, be said to have taken place
before the event upon which it was staked occurred, still, as
has been shown, the mere act of making the wager was, under
the law, itself a completed crime, and in such case, therefore,

a party to the betting transaction cannot claim to be in any different or better position, in the eyes of the law, than if, in the absence of any penal statute against wagering upon such events as the one concerned here, he should, after such event had taken place and been decided against him, seek the aid of the courts in an attempt to recover the money so wagered and lost.

It necessarily follows from the conclusion thus arrived at that not only was the act of the plaintiff in placing the wager a misdemeanor, but that of the defendant, in accepting it as stakeholder, was likewise a misdemeanor, since, by accepting and retaining the wager in that capacity, the latter became an aider and abettor of the plaintiff in the consummation of the crime, or thus encouraged its commission. (Pen. Code, sec. 31.) In fact, it was essentially the joint acts of the parties to the wager and the stakeholder, the former in making the wager and the latter in accepting it, to retain it as a stakeholder until the decision of the event upon which the wagered money was placed, which constituted the crime denounced by the legislature in that part of section 337a of the Penal Code above quoted.

The result of the foregoing views is that the plaintiff and the defendant, in committing the misdemeanor from the civil liability or consequences of which the former seeks to be relieved through the instrumentality of this action, became *particeps criminis,* and, therefore, they stand *in pari delicto* in the execution of the criminal and, by necessary consequence, the illegal agreement.

Necessarily, under the circumstances, the plaintiff, in attempting to state a cause of action, was not only required to plead his own turpitude in the transaction, but was compelled to admit that the transaction itself constituted a crime under the laws of this state. As has heretofore been stated, the law, as administered either in courts of law or of equity, will not, obviously, interpose to grant relief to the parties to such a transaction from any of the effects thereof, but will leave them where it finds them.

The conclusion arrived at here is not only in consonance with the soundest principles, but is sustained by the authorities. (See *Ager* v. *Duncan,* 50 Cal. 325; *McGregor* v. *Donelly,* 67 Cal. 149, 151, [7 Pac. 422]; *City of Los Angeles* v.

*State Bank,* 100 Cal. 18, 24, [34 Pac. 510] ; *Parker* v. *Otis,* 130 Cal. 322, 326, [92 Am. St. Rep. 56, 62 Pac. 571, 927] ; *Schenck* v. *Hirshfield,* 22 Cal. App. 709, [136 Pac. 725] ; *Sutphin* v. *Crozer,* 32 N. J. L., 462.)

The case of *Parker* v. *Otis,* 130 Cal. 322 [92 Am. St. Rep. 56, 62 Pac. 571, 927], involved an action to recover money paid to the defendants by the plaintiff for the purchase of mining stocks of mining corporations on margin. The action was brought upon the authority of section 26 of article IV of the constitution, which provides: ''All contracts for the purchase or sale of shares of the capital stock of any corporation or association, on margin to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction.'' Upholding the judgment in favor of the plaintiff, the supreme court said, among other things: ''The constitution treats the transactions in question as harmful in their tendency, and because harmful has sought to eradicate the evil not only by declaring the contract void, but also by giving a right of action to recover the money paid under it. Being *in pari delicto,* the purchaser of stocks would be left where the law finds him but for the remedy given by the constitution.'' In the case at bar, as we have seen, the law not only gives no remedy for the recovery of money staked upon the result of a wrestling match or other like contest of skill between men, but positively prohibits and penalizes such wager.

But the New Jersey case of *Sutphin* v. *Crozer,* 32 N. J. L. 462, is like this case in all essential particulars, and for that reason we quote from the opinion therein *in extenso,* as follows:

''That since the act of 1846 to prevent horse racing (Nix. Dig. 339), which declares that all persons concerned in horse racing, directly or indirectly, shall be guilty of a misdemeanor, and that if any person shall be a stakeholder, he shall be guilty and punishable by a fine and imprisonment, and which enacts that all promises and agreements made by and between any person, when the whole or any part of the consideration thereof shall be for money betted on the running or trotting of any horse, shall be utterly null and void and of no effect, no action can be maintained by one of the guilty parties against the other to recover back the money thus illegally staked,

whatever disposition may be made of it by the stakeholder. The statute 8 and 9 Victoria, chapter 6, section 18, provides that no suit shall be maintained for the recovery of anything deposited to aid in the event of any wager. What this statute has so wisely done in direct terms, has, in my opinion, been done with equal efficiency in the case of a wager on a horse race, by the statute in this state abrogating the previous statute, which allowed an action to recover back money actually paid to the winner, and by placing the stakeholder in the category of *particeps criminis.* He is thus brought within the statutory rule that when the two parties to a transaction are equally criminal, the law will render no aid to either. . . . By accepting stakes, the stakeholder becomes something more than an innocent stakeholder—he becomes an aider and abettor of the persons betting, and becomes so by their procurement. The persons thus using him have no claim to the aid of a court of justice if he proves false to his trust, nor can they be allowed to say that they have repented of their evil proceedings and desire to stop the race and reclaim their money. Their crime has been consummated in making and receiving a bet. The crime is punishable with the same severity as the actual running of the race.''

It is entirely clear to our minds that, under the principle applied in the foregoing case, this action cannot be maintained, and the judgment is, therefore, reversed, with directions to the trial court to sustain the general demurrer to the complaint.

Chipman, P. J., and Burnett, J., concurred.