ALLEN P. MILLER, Appellant, *vs.* CHARLES SINCERE *et al.* Appellees.

*Opinion filed April 20, 1916—Rehearing denied June 8, 1916.*

1. GAMING—*prior to 1913 section 132 of the Criminal Code applied to all brokers negotiating illegal trades.* Prior to its amendment in 1913, section 132 of the Criminal Code, which provides, generally, that losses incurred by gaming may be recovered by the loser from the winner, applied to all brokers or commission men negotiating transactions which under section 130 of the Criminal Code were gambling contracts.

2. SAME—*amendment of 1913 to section 132 of Criminal Code is unconstitutional.* The amendment of 1913 to section 132 of the Criminal Code, which provides that "no person who accepts from another person for transmission, and transmits, either in his own name, or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person on, any regular board of trade or commercial or stock exchange, shall, under any circumstances, be deemed a 'winner' of any moneys lost by such other person in or through

any such transactions," is unconstitutional, as discriminating in favor of brokers or agents executing orders on a board of trade or commercial or stock exchange.

3. CONSTITUTIONAL LAW—*when a party may raise question of constitutionality of statute.* Where a statute is set up as a defense to an action at law the plaintiff has a right to raise the question that the statute is unconstitutional as discriminating against a certain class, even though he is not a member of the class discriminated against.

4. SAME—*extent of legislative discretion in enacting criminal statutes.* While the legislature, in the enactment of criminal statutes, has a wide discretion in determining what shall be considered a crime and in classifying crimes, yet there must be some reasonable ground for making a distinction between individuals or different classes of persons.

5. SAME—*invalidity of amendment of 1913 to section 132 of Criminal Code does not affect remainder of section.* The invalidity of the amendment of 1913 to section 132 of the Criminal Code, which attempts to exempt from liability, as a "winner," any broker executing orders on a regular board of trade or stock exchange, does not affect the remainder of such section.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, of counsel,) for appellant.

HENRY S. ROBBINS, (HARRY C. LEVINSON, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant, plaintiff in the court below, brought suit in assumpsit against appellees to recover moneys paid by the plaintiff to the defendants and which it was alleged was lost to the plaintiff in different transactions conducted by the defendants, as brokers, for the plaintiff in gambling on futures in grain. The first and second counts of the declaration are similar to the counts of the declaration heretofore approved by this court in the case of *Kruse* v. *Kennett,* 181 Ill. 199. The defendants filed pleas of the general issue,

pleas denying joint liability and special pleas, setting out in the special pleas that all the contracts and transactions sued on and mentioned in the first and second counts of the declaration were made by the defendants upon a regular board of trade or commercial exchange, to-wit, the board of trade of the city of Chicago, and were so executed upon orders given by the plaintiff to the defendants and by them executed upon such exchange. The pleas are based upon an amendment to section 132 of the Criminal Code, enacted by the legislature in 1913. (Laws of 1913, p. 256.) The plaintiff filed replications to all pleas except the special pleas above referred to and filed general and special demurrers to those pleas, alleging the amendment of 1913 was unconstitutional. The demurrers were overruled, and the plaintiff electing to stand by the same, judgment was entered against him, and this appeal followed.

The section of the statute on which the declaration was based is section 132 of the Criminal Code, (Hurd's Stat. 1913, p. 832,) which provides, generally, that losses incurred by gaming may be recovered by the loser from the winner. In construing this statute as it existed after the revision of the Criminal Code, in 1874, until the amendment of 1913 above referred to, this court held that an action would lie under section 132 to recover money lost at gaming against a broker or commission man, and that such broker or commission man who received money or property to be used in the payment of losses incurred in transactions in grain which would be gambling contracts under section 130 of the Criminal Code, which prohibits the giving of options to buy or sell at a future time grain or other commodities, stock of any railroad or other company, etc., is a "winner" within the meaning of section 132 and subject to the penalty imposed thereby. *Kruse* v. *Kennett, supra; Jamieson* v. *Wallace,* 167 Ill. 388; *Pearce* v. *Foote,* 113 id. 228.

The sole question raised by the assignments of error and presented by this appeal is as to the constitutionality of the

part herein italicized of section 132 of the Criminal Code, which is as follows: "Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit, or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. In any such action at law it shall be sufficient for the plaintiff to declare generally as in actions of debt or assumpsit for money had and received by the defendant to the plaintiff's use, or as in actions of replevin or trover upon a supposed finding and the detaining or converting the property of the plaintiff to the use of the defendant, whereby an action hath accrued to the plaintiff according to the form of this act, without setting forth the special matter. In case the person who shall lose such money or other thing, as aforesaid, shall not, within six months really and *bona fide,* and without covin or collusion, sue, and with effect prosecute, for such money or other thing, by him lost and paid or delivered, as aforesaid, it shall be lawful for any person to sue for, and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid; one-half to use of the county, and the other to the person suing. *No person who accepts from another person for transmission, and transmits, either in his own name, or in the name of such other person, any order for any transaction to be made upon, or*

*who executes any order given to him by another person on, any regular board of trade or commercial or stock exchange, shall, under any circumstances, be deemed a 'winner' of any moneys lost by such other person in or through any such transactions."* The part of this section not italicized was inserted as section 132 of the "Act to revise the law in relation to criminal jurisprudence," commonly known as the Criminal Code, adopted in 1874. The part italicized was added by way of amendment in 1913.

It is contended by appellant that this amendment is in violation of the fourteenth amendment to the constitution of the United States, also of section 2 of article 2 and of the following provisions of section 22 of article 4 of the constitution of Illinois: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say, for * * * remitting fines, penalties or forfeitures; * * * granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. In all other cases where a general law can be made applicable no special law shall be enacted." It is insisted by the appellees that the amendment in question does not violate any of the constitutional provisions referred to; also that appellant cannot attack the statute as class legislation because he does not belong to the class discriminated against, and that there is no discrimination, because section 132 does not confer on the loser in an ordinary wager the right to recover his losses from his own agent. It is further claimed by appellees that the legislature, in enacting section 132, was exercising its right to make criminal laws, and if construed to create a right to recover against agents or losers in other bets it does not discriminate in the constitutional sense.

As hereinbefore stated, section 132 of the Criminal Code, as construed by this court in connection with section 130, applies to brokers or agents who negotiated transactions in grain in the nature of options or gambling transactions in

which it was agreed or understood that no grain or other commodity was to be delivered but that settlements were to be made according to the market price or the difference between the market price when the transaction was made and when the option or trade was closed. In other words, as construed by this court in the cases before referred to, the statute can be considered as if parties acting in the capacity of appellees in this case had been expressly named in that statute. The amendment of 1913 in question does not purport in all cases to exempt an agent or broker or to exempt all agents or brokers from the provisions of section 132 as amended. It merely provides that no person who accepts from another person for transmission, and transmits either in his own name or in the name of such other person, any order for any transaction to be made upon or who executes any order given to him by another person on any regular board of trade or commercial or stock exchange, shall under any circumstances be deemed a winner of any money lost by such other person in or through any such transaction, thereby exempting from the provisions of the law only those brokers or agents who execute the order upon a regular board of trade or commercial or stock exchange. A broker plying his vocation on the street, or any other place not connected with a regular board of trade or commercial or stock exchange, would still, under certain circumstances, be deemed a winner and amenable to the provisions of the section and liable for losses incurred thereunder. Counsel in their briefs have referred to but one board of trade, and that the Chicago Board of Trade. Whether there are other boards of trade or commercial or stock exchanges which would come within the definition of those named in the amendment we are not advised, nor, in our opinion, would it make any difference, as there is squarely an attempt to grant a special privilege and immunity to those individuals who may belong to such organizations and discriminate against those who do not belong to them but are doing the

same business. Take, for instance, the Chicago Board of Trade, which is conceded by counsel to be at least one of those which are referred to in the amendment. If a person, as agent or broker or otherwise, took an order which would bring him under the provisions of section .132 he would be liable under that section. If, on the other hand, he transmitted this order upon the Chicago Board of Trade he would not be liable. It is true that it has been held that one who is not affected by a law cannot raise the question of its constitutionality. The rule is stated in Cooley's Constitutional Limitations, (6th ed. 196,) as follows: "A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and who has therefore no interest in defeating it." (*Clark v. Kansas City,* 176 U. S. 114.) A mere statement of the rule, however, shows it has no application in the case at bar, as the right of appellant to recover depends upon the constitutionality of the law in question, and he is entitled to raise the question of its constitutionality when such law is invoked to defeat his right to recover.

It is entirely true that the legislature, in the enactment of criminal statutes, has a wide discretion in the determination of what shall be considered a crime and the classification of crimes. However, in any event, some reason must exist if any difference is made between individuals or different classes, and we are utterly unable to distinguish any difference in this case between those who are made immune and those who are not. Nor has any sufficient reason been urged by counsel for appellees in their able and exhaustive argument why a difference should be made in the case of one who is not a member of a board of trade and one who is, and the former subjected to liability for doing exactly the same thing that the other would not be held liable for. There is no reason why the Chicago Board of Trade or stock exchange, or any other similar institution anywhere in the State, should be made a sanctuary for those who com-

mit the crime of gambling on futures in grain or stocks. If it could lawfully be done, then it would be lawful to provide that persons could gamble at cards or with dice, or other well known gambling devices, in a board of trade or stock exchange building but nowhere else. Conceding that there is ample reason for the enactment of the criminal statutes against gaming and betting of all kinds, then a bet or wager which is made upon any uncertain event, whether it be the future price of grain, or the result of a race, or the turn of a card, or the cast of a die, would be no different, in principle, than other kinds of gambling. The test is always, is the wager or bet upon any uncertain event or contingency?—and such is, in fact, the language of the statute. What possible difference would it make in the effect upon the community if persons were allowed to gamble at cards or to gamble on what the weather would be or what the price of grain would be in the future? The argument of appellees is very largely addressed to such alleged difference, and it is claimed that the board of trade is necessary as a mart in which the products of the great grain-growing States can be efficiently disposed of. It must be remembered that the law is not aimed at legitimate transactions,—that is, at the actual buying and selling of grain or other commodities, either for present or future delivery. Such dealing, if *bona fide,* is not in any way restricted by the act. On the other hand, mere gambling in futures on what the price of grain may be, without any delivery being made or intended, is entirely another matter, and as to whether such transactions are a benefit or a detriment to those who are interested in the markets as actual growers and handlers and buyers of grain and other agricultural products has heretofore been expressed by this court in the case of *Cothran* v. *Ellis,* 125 Ill. 496.

Enactments similar to this have been heretofore held invalid and unconstitutional because of their unfair and discriminating character. In 1893 the legislature of this State

adopted a statute prohibiting all kinds of trusts, combinations, pools, etc. (Laws of 1893, p. 182.) The ninth section of this act provided that "this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser." In *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, this act was held to be contrary to the fourteenth amendment to the constitution of the United States, which declares that "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." In *Noel* v. *People,* 187 Ill. 587, it was held that the Pharmacy act, which provided that no persons should sell patent medicines unless they were registered pharmacists, was held unconstitutional and contrary to section 22 of article 4 of the constitution of 1870. To the same effect are *Booth* v. *People,* 186 Ill. 43; *City of Chicago* v. *Netcher,* 183 id. 104; *Millett* v. *People,* 117 id. 294; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302; *Josma* v. *Western Steel Car Co.* 249 id. 508; *Green* v. *Red Cross Medical Service Co.* 232 id. 616; *Eden* v. *People,* 161 id. 296; *Frorer* v. *People,* 141 id. 171.

We are of the opinion the amendment of 1913 is invalid and unconstitutional. This does not, however, affect the balance of the act. (*People* v. *Butler Street Foundry Co.* 201 Ill. 236, and cases cited; *Connolly* v. *Union Sewer Pipe Co. supra.*) In any event, even if the whole act were unconstitutional for the reasons given, the law would remain the same as it was before the enactment of the amendment of 1913, which would leave sections 130 and 132 the same as they were before they were amended.

For the reasons given, the judgment of the circuit court of Cook county will be reversed and the cause remanded to that court for further proceedings consistent with this opinion.            *Reversed and remanded.*