RICHTER v. EMPIRE TRUST CO. et al.
No. 85–94.

District Court, S. D. New York.
Aug. 13, 1937.

290

Edward V. Broderick, of New York City, for plaintiff.

Harris Jay Griston and Louis Karasik, both of New York City, for defendant Frad.

LEIBELL, District Judge.

Defendants Harold I. Thompson and William D. Frad move to dismiss the bill of complaint on the ground that it fails to state facts sufficient to constitute a cause of action against said defendants and for want of equity.

The plaintiff seeks to recover the sum of $36,620 paid to defendant Frad in satisfaction of a gambling debt. According to the allegations of the complaint, plaintiff and Frad played cards aboard a steamship en route from New York to San Francisco and "by the time said steamer reached the Port of San Francisco" the sum of $36,620 was claimed by Frad to be due. Plaintiff thereupon made and delivered his check in that sum to Frad. The check was drawn on the Continental Illinois Bank & Trust Company, a banking institution carrying on business in the city of Chicago, State of Illinois.

Thereafter, the check was delivered by Frad to the defendant Empire Trust Company in New York, and through said bank was presented for payment in Chicago. The check was paid, and the complaint alleges that the proceeds are now held by defendant 'Empire Trust Company, which has received notice of plaintiff's claim. The defendant Thompson is joined as a party because he claims an interest in part of the fund now held by the bank.

Plaintiff's bill of complaint prays for the following relief:

"1st: · That defendant, Empire Trust Company, discover and disclose to plaintiff all and singular its receipts and payments of money, and its disposition of said money or any part thereof.

"2nd. That an accounting by defendants with plaintiff respecting all and singular said moneys so received and held by defendant, Empire Trust Company, and ascertaining the amount of said moneys justly and equitably due to plaintiff with the interest thereon accrued.

"3rd: That the rights, if any, of defendant, Harold I. Thompson, in and to said fund or any part thereof be adjudicated.

"4th: That such money so traceable in said account be impressed with a trust in behalf of plaintiff.

"5th: That the above described moneys and the entire sum thereof is the property of plaintiff.

"6th: That plaintiff recover from defendants the said amount which shall be found due, as aforesaid, to plaintiff, with costs.

"7th: That defendants be enjoined and restrained from paying out, receiving or in any manner interfering with any portion of the moneys hereinbefore referred to on deposit with said defendant, Empire Trust Company.

"8th: That defendant, Empire Trust Company, pay to plaintiff the moneys in its hands deposited by said William D. Frad and belonging to this plaintiff."

It is fundamental that on this motion to dismiss the complaint, the court cannot look beyond the allegations set forth in the complaint. But, for the purposes of pleading and proof, a Federal District Court will judicially notice "the law of any state

of the Union, whether depending upon statutes or upon judicial opinions." Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94; Hanley v. Donoghue, 116 U.S. 1, 6, 6 S.Ct. 242, 29 L.Ed. 535.

Generally, in the absence of statute, neither party to a gambling transaction was accorded any relief, either at law or in equity, and the loser was unable to recover back any money paid to the winner. Meech v. Stoner, 19 N.Y. 26; Landley v. Fischer, 226 App.Div. 352, 235 N.Y.S. 368; Higgins v. McCrea, 116 U.S. 671, 685, 6 S.Ct. 557, 29 L.Ed. 764; White v. Barber, 123 U.S. 392, 8 S.Ct. 221, 31 L.Ed. 243. "Gambling contracts, being opposed to good morals and public policy, are not recognized by the courts." Matthews v. Lopus, 24 Cal. App. 63, 140 P. 306, 307. However, the general rule has in many jurisdictions been modified by statute. In California, in cases where the type of wager is not specifically declared a crime, money may be recovered from a stakeholder as long as the venture was in no sense executed, "and until executed both parties are given an opportunity for repentence and rescission." Matthews v. Lopus, supra. But the plaintiff in this case is not relying solely on the law of California for his remedy herein. A reading of the complaint would indicate that plaintiff bases his right of action principally upon the statute law of Illinois, the place where the check in question was made payable and where it was actually paid.

In the ninth paragraph of the bill of complaint, the plaintiff has set out Smith-Hurd Ill.Stats. c. 38, § 329 (section 131); paragraph 309 of chapter 38 of the Revised Statutes of Illinois. The effect of the statute pleaded is to render void and unenforceable any agreement made or check given where the consideration in whole or part is a gambling debt. This statute would have barred a recovery by Frad in a suit upon the check given by plaintiff. Moulis v. Owen, 1 K.B. 746.

There is another section of the Illinois statute, which is not pleaded in the complaint, but may nevertheless be judicially noticed by this court. Smith-Hurd Ill.Stats. c. 38, § 330 (section 132); paragraph 310 of chapter 38 of the Illinois Revised Statutes provides:

"310. Losses at Gaming Recoverable. § 132. Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods, or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, *assumpsit*, or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. In any such action at law it shall be sufficient for the plaintiff to declare generally as in actions of debt or *assumpsit* for money had and received by the defendant to the plaintiff's use, or as in actions of replevin or trover upon a supposed finding and the detaining or converting the property of the plaintiff to the use of the defendant, whereby an action hath accrued to the plaintiff according to the form of this act, without setting forth the special matter. In case the person who shall lose such money or other thing, as aforesaid, shall not, within six months really and *bona fide,* and without covin or collusion, sue, and with effect prosecute, for such money or other thing, by him lost and paid or delivered, as aforesaid, it shall be lawful for any person to sue for, and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid; one-half to use of the county, and the other to the person suing."

Although the Illinois statute is part of the penal law of that state, it is not penal but remedial in character in so far as it gives the loser the right to recover back the money lost at gaming. As the Supreme Court has said in Huntington v. Attrill, 146 U.S. 657, at page 667, 13 S.Ct. 224, 227, 36 L.Ed. 1123:

"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither

the liability imposed nor the remedy given is strictly penal.

"The action of an owner of property against the hundred to recover damages caused by a mob was said by *Justices* Willes and Buller to be 'penal against the hundred, but certainly remedial as to the sufferer.' Hyde v. Cogen, 2 Dougl. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a qui tam action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer. Bones v. Booth, 2 W.Bl. 1226; Brandon v. Pate, 2 H.Bl. 308; Grace v. McElroy, 1 Allen [Mass.] 563; Read v. Stewart, 129 Mass. 407, 410; Cole v. Groves, 134 Mass. 471. As said by Mr. Justice Ashhurst in the king's bench, and repeated by Mr. Justice Wilde in the supreme judicial court of Massachusetts, 'it has been held in many instances that, where a statute gives accumulative damages to the party grieved, it is not a penal action.' Woodgate v. Knatchbull, 2 T.R. 148, 154; Read v. Inhabitants of Chelmsford, 16 Pick. [Mass.] 128, 132."

Unfortunately the bill of complaint herein fails to allege the nationality of the ship on which the gambling took place. If this was an American ship, there is no allegation of the port of registry, so that the court is not in any position to say what law would apply in determining the legality of the gambling transaction. The pleading does state that by the time the ship reached the Port of San Francisco the defendant Frad announced to the plaintiff that the plaintiff had lost $36,620 and owed that sum to Frad. The complaint would bear the interpretation that the check was delivered in the Port of San Francisco in payment of this gambling debt. The brief of the defendant states that the gambling took place on the Santa Rosa, a vessel of the Grace Line, whose port of registry is the city of San Francisco. Of course, the court cannot take any notice of that fact, if it is a fact, in passing upon a motion to dismiss for insufficiency, which is directed solely to the allegations of the pleading.

If section 330 (section 132) of chapter 38, law of Illinois, is applicable to the present situation, the plaintiff has a right of recovery for there is no question but that the payment of which a recovery is sought actually took place in Chicago, Ill. The check which the plaintiff gave Frad in the Port of San Francisco was deposited by Frad with the Empire Trust Company in New York and that bank as Frad's agent forwarded the check to its correspondent bank in Chicago, the City National Bank & Trust Company, which in turn presented the check for payment to the plaintiff's bank, the Continental Illinois Bank & Trust Company in Chicago. Payment was made in Chicago in the usual banking way and the credit was passed on through City National Bank & Trust Company to the Empire Trust Company of New York and by that bank was credited to Frad's account.

The question remains whether section 330 (section 132) of the Illinois statute is applicable unless it be shown that the gambling debt, which was discharged by the payment in Illinois, was void or illegal under the law of the jurisdiction where the debt arose. I have been unable to find any case in the State of Illinois in which this precise point has been passed upon.

New York State has statutes similar to that of Illinois (New York Penal Law [Consol.Laws, c. 40] §§ 991–995). Both statutes are patterned after 9 Anne, ch. 14. It seems that the view of the New York courts is that statutes of this nature have no extraterritorial effect and do not allow a recovery back of the consideration paid in satisfaction of the gambling debt, unless the debt was void or illegal under the law of the jurisdiction where the debt was incurred.

In Zeltner v. Irwin, 25 App.Div. 228, at pages 229 and 230, 49 N.Y.S. 337, 338, the court said: "There is no doubt that wagering contracts, as such, were not invalid at common law, unless, in addition to being wagering contracts, they contravened some recognized rule of public policy. The wagering element, merely, was not sufficient to make the contract invalid or to authorize a person who had invested money upon it to recover that money from the person to whom he had paid it. Chit. Cont. (11th Am.Ed.) 735; Bunn v. Riker, 4 Johns, 426 [4 Am.Dec. 292]. The right to recover of the plaintiff, then, must stand upon the statute of the state of New York. But that statute has no extraterritorial force, and it cannot operate to make unlaw-

ful any contract which was valid in the jurisdiction where it was made. If the plaintiff's assignors entered into this contract in the state of Pennsylvania, they were bound by it, if it was a valid contract there. Story Confl.Laws, § 282; Jewell v. Wright, 30 N.Y. 259 [86 Am.Dec. 372]. There is no proof in the case, and no allegation in the complaint, that in Pennsylvania such contracts were invalid, or that by the laws of that state money paid upon them could be recovered back. Such invalidity, and the right to recover, only comes to exist by the statute, and there is no presumption that the statute of Pennsylvania in that respect is like the statute of the state of New York (Cutler v. Wright, 22 N.Y. 472); but, on the contrary, in the absence of proof on the subject, the presumption is that the law which obtains there is the common law (Greenl. Ev. [14th Ed.] § 43, note; Harris v. White, 81 N.Y. 532). By that law this contract was not illegal."

 It would seem, therefore, that the principles applicable to the present situation are as follows: A state statute declaring gambling transactions to be illegal has no effect upon gambling transactions which take place in another jurisdiction. A state statute which allows a recovery by the loser against the winner of money paid, within the state, in satisfaction of a gambling debt, has no application if the gambling debt was incurred in another jurisdiction, unless by the law of that other jurisdiction the debt was illegal or void. If the rule were otherwise, one state could, by its statute, allow the disaffirmance and rescission of valid transactions which took place in another jurisdiction and to which its laws were not applicable. Moulis v. Owen, supra.

I am of the opinion, therefore, that the plaintiff has no right under the Illinois statute to recover back his money paid in Illinois, unless it appear from his pleading that the gambling took place in a jurisdiction where the gambling debt was illegal or void.

As the complaint now stands, the court is unable to determine what law applies to the gambling transaction. Therefore, the complaint fails to state facts sufficient to constitute a cause of action under the Illinois statute.

The motion to dismiss the complaint will be granted, with leave to plaintiff to serve within twenty days an amended complaint which will remedy the defects now existing in the pleading.

Settle order on notice.