Myrtle M. Salzman, Appellant, v. William E. Boeing et al., Trading as E. A. Pierce and Company, Appellees.

Gen. No. 40,802.

Heard in the first division of this court for the first district at the June term, 1939. Opinion filed April 8, 1940. Rehearing denied April 22, 1940.

FYFFE & CLARKE, of Chicago, for appellant; JOHN HARRINGTON and ALBERT J. SMITH, both of Chicago, of counsel.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellees; BENJAMIN V. BECKER and HAROLD M. KEELE, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendants who were brokers and members of the Chicago Board of Trade, to recover $21,525.05 which she claimed to have lost in the buying and selling of wheat. She predicates her right to recover by virtue of the provisions of par. 330, sec. 132, ch. 38, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 37.260]. At the close of plaintiff's case, on motion of defendants, the court found in favor of defendants, judgment was entered on the finding, and plaintiff appeals.

The record discloses that plaintiff, a housewife, had operated a moving picture theater a number of years and after coming to Chicago, leased and managed an apartment house; that about July, 1936, she heard that E. A. Pierce & Company were reputable brokers dealing in stocks and bonds, wheat, etc., on the stock exchange and Board of Trade in Chicago. Some time in July, 1936, plaintiff went to defendants' office in Chicago with $3,000 which she desired to invest. She there met Mr. Palke, a "customer's man" and explained her business to him. Palke's duties were to accept orders from customers to buy and sell and to furnish them with information. Between July, 1936 and July 23, 1937, plaintiff purchased and sold through defendants, securities in the amount of $118,445.64. From July 9, to July 17, 1937, she purchased and sold 100,000 bushels of wheat through defendants, the purchase price of which was approximately $130,000. None of these transactions are involved in this suit and are only mentioned to show a course of dealing, etc. between the parties.

The evidence further shows that between July 17 and 20, 1937, plaintiff, through defendants, bought 140,000 bushels of wheat for future delivery at a cost of more than $180,000. All of this wheat was sold from July 27 to August 4, for a little more than $159,000. In the meantime, plaintiff had deposited with defendants more than $20,000, which was substantially all of her assets and when defendants sold the last of the wheat there was a balance due them of $156.97. Plaintiff claims the amount of her losses was $21,525.05, for which she sues. The facts of the purchases and sales of the 140,000 bushels of wheat as above stated were stipulated.

Plaintiff testified she went to defendants' place of business in July, 1937, and talked to Mr. Smith, one of defendants and a member of E. A. Pierce & Company, about her business with defendants. There is other evidence in the record as to the dealing between the parties but since we have reached the conclusion the judgment must be reversed and the cause remanded for trial, we think it unnecessary to mention it further.

Par. 328, sec. 130, and par. 330, sec. 132, ch. 38, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 37.258, 37.260], provide: (Sec. 130.) ''Whoever contracts to have or give himself or another the option to sell or buy, at a future time, any grain, or other commodity, . . . where it is at the time of making such contract intended by both parties thereto that the option, whenever exercised, or the contract resulting therefrom, shall be settled, not by the receipt or delivery of such property, but by the payment only of differences in prices . . . shall be fined not less than $10 or more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void.'' (Sec. 132.) ''Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as

do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by any appropriate civil action from the winner thereof, . . . No person who accepts from another person for transmission and transmits, either in his own name, or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person on, any regular board of trade or commercial or stock exchange, shall, under any circumstances, be deemed a 'Winner' of any moneys lost by such other person in or through any such transactions.''

''To constitute a gambling transaction it must be made to appear that neither party intended the commodity purchased to be delivered but both intended the transaction should be settled on differences.'' *Ehrlich v. Rothschild,* 292 Ill. App. 511; *Pelouze v. Slaughter,* 241 Ill. 215. It is also the law that the intention of the parties may appear from all the circumstances in evidence. *Ehrlich v. Rothschild, supra; Riordon v. McCabe,* 341 Ill. 506.

The provision of sec. 132, which we have above quoted, by which it was sought to exempt ''board of trade or commercial or stock exchange'' from liability, and which was added as an amendment to the section in 1913 was declared unconstitutional. *Miller v. Sincere,* 273 Ill. 194. Afterwards in 1935, the legislature again amended sec. 132 and other sections of the Criminal Code so as to bring that code in harmony with the Civil Practice Act which became effective Jan-

uary 1, 1934. But the legislature did not eliminate from the amended section that part which had been declared unconstitutional in the *Sincere* case but re-enacted it in its entirety. Counsel for defendants say, in effect, that public opinion has changed since that case was decided in its attitude towards boards of trade and stock exchanges and that this was the view of the legislature in re-enacting that part of the section which had theretofore been declared unconstitutional. Sec. 13 of art. 4, of the Constitution of Illinois of 1870 provides: "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new Act."

Whether counsels' contention is correct or whether the legislature overlooked the fact that part of the section had been declared unconstitutional, is unnecessary for us to determine. While the precise contention now made does not seem to have been heretofore considered, yet we feel that what was said by our Supreme Court in *City of Altamont v. Baltimore & Ohio R. Co.,* 348 Ill. 339, is controlling. In that case the city council passed an ordinance requiring railroad companies to maintain flagmen at street crossings. Prior to the passage of the ordinance, the railroad company, in obedience to an order of the Illinois Commerce Commission, had installed flash lights at the crossings and refused to comply with the ordinance. The city brought an action against the railroad company to recover the penalty prescribed by the ordinance. The court pointed out that the Cities and Villages Act required railroad companies to keep flagmen at grade crossings of streets, which remained unchanged until the passage of the Public Utilities Act in 1913, which act authorized the Commerce Commission to regulate railroad crossings at grades. In 1929, the legislature amended the Cities and Villages Act which included the provision of the act which had been rendered nugatory by the passage of the Public Utilities Act. In passing on the

question the court said: "The appellant contends that the amendment of 1929 restored the power to the city council to require railroad companies to keep flagmen at street crossings and that the ordinance is therefore valid. The contention is without merit. By section 2 of the act entitled 'An act to revise the law in relation to the construction of the statutes,' (Cahill's Stat. 1931, p. 2687; Smith's Stat. 1931, p. 2838), 'The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.' When the General Assembly amends a statute and no change is made in parts of it, the repeated portions, either literally or substantially, are regarded as a continuation of the existing law and not as the enactment of a new law upon the subject. . . . Section 27 of article 5 of the Cities and Villages act, with respect to the power here claimed, was therefore a continuation of the provision as originally enacted and left sections 57 and 58 of the Public Utilities act unaffected and unimpaired."

Following the holding in that case, we are of opinion that the part of sec. 132 declared unconstitutional by our Supreme Court in the *Sincere* case, was not again put into the section by the amendment of 1935. It follows therefore that defendants are not exempt from liability by the provisions of sec. 132.

Our Supreme Court having declared part of the section unconstitutional, the question is no longer debatable and this court has jurisdiction.

Counsel for defendants, in support of their contention that the judgment should be affirmed, say: "The record supports the trial court's finding that the defendants did not have the specific intent required by the statute, and any intent the agent Palke may have had not to deliver or receive the grain in question may not be imputed to the defendants." This was the sole ground on which the court based its decision. In ren-

dering his opinion, the court, in deciding the case said: "In addition to the penalty for the violation, there is a civil remedy also provided for. But the act is penal in its character, and even though the action is a civil one, it is a civil action based upon a penal statute, a statute which clearly prescribes the penalty for, and declares it to be a crime for any broker to do the things prohibited by that statute.

"You deal with the subject of agency, and involved in that subject is whether or not the agent had either express authority or implied authority. The implied authority might come from the acts committed that are within the apparent scope of his authority.

"Now, his authority, express authority, has been defined here, about which there is no dispute. Mr. Smith [one of the defendant partners] testified precisely to what Palke's authority was as a customer's man, or salesman. . . . There is never any implied authority to an agent to commit a crime."

We think the holding was wrong. Defendants cannot escape liability on the ground that plaintiff dealt with their agent and not directly with one of the members of the firm. Palke's knowledge was imputable to defendants, his employers. *Powell v. McCord,* 121 Ill. 330; *Weare Commission Co. v. People,* 209 Ill. 528; *Ohlendorf v. Bennett,* 241 Ill. App. 537; *Lamson v. West,* 201 Ill. App. 251; *Hyman & Co. v. Hay,* 277 Fed. 898. We think the evidence shows that what Palke did in connection with his dealings with plaintiff was what he was hired to do.

In *Richter v. Empire Trust Co.,* 20 F. Supp. 289, the United States District Court of New York held that sec. 132 was not penal but remedial in its nature. The court there said: "Although the Illinois statute is part of the penal law of that state, it is not penal but remedial in character in so far as it gives the loser the right to recover back the money lost at gaming. As the Su-

preme court has said in *Huntington v. Attrill,* 146 U. S. 657, at page 667, 13 S. Ct. 224, 227, 36 L. Ed. 1123:

" 'Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

" 'The action of an owner of property against the hundred to recover damages caused by a mob was said by Justices Willes and Buller to be "penal against the hundred, but certainly remedial as to the sufferer." *Hyde v. Cogen,* 2 Dougl. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a qui tam action to be brought by any other person for three-fold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer.' "

For the reasons stated, the judgment of the circuit court of Cook county is reversed and the cause remanded, for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.